**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

BRUCE HALLETT,

                              Plaintiff,

            -against-

STUART DEAN CO., INC., ADRIENE
BAILEY, individually, THOMAS BROWN,
individually, MARGARET CULLEN,
individually, SCOTT DAY, individually,
CHRIS DEGAN, individually, CATHLEEN
DEGAN-NIKAS, individually, SCOTT
HALSTEAD, individually, TIMOTHY
SHEA, individually, and KRISTEN
SCHORP, individually,

                          Defendants.

---------------------------------------------------------------x

Civ. No.:  1:20-cv-03881 (JSR)

## <u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>

JACKSON LEWIS P.C.
*Attorney for Defendants*
666 Third Avenue, Floor 29
New York, NY 10017
(212) 545-4000

Attorneys of Record:
  Michael A. Jakowsky, Esq.
  Lauren A. Parra, Esq.

# TABLE OF CONTENTS

**Pages**

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ..................................................................................... 3

A.     Plaintiff's Employment With Stuart Dean. ......................................................... 3

B.     Plaintiff's Termination from Defendant Stuart Dean. ......................................... 5

STANDARD OF REVIEW .................................................................................... 5

ARGUMENT ....................................................................................................... 7

POINT I

PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT WITH
RESPECT TO THE INCENTIVE COMPENSATION ALLEGEDLY DUE PURSUANT
TO PLAINTIFF'S EMPLOYMENT AGREEMENT ....................................................... 7

    A.   Plaintiff Does Not Allege The Existence Of A Valid And Enforceable Long
        Term Incentive Plan. .................................................................................. 7

    B.   Plaintiff Does Not Allege Facts Demonstrating His Entitlement to Payout of
        His Annual Bonus Upon Termination. ........................................................ 10

POINT II

PLAINTIFF'S TORT CLAIMS MUST BE DISMISSED BECAUSE THEY ARE
DUPLICATIVE OF, AND ARISE FROM THE SAME CONDUCT AS, PLAINTIFF'S
BREACH OF CONTRACT CLAIMS .................................................................... 11

    A.   Plaintiff Cannot State A Claim For Promissory Estoppel. ............................. 12

    B.   Plaintiff's Breach of Implied Covenant of Good Faith and Fair Dealing Claim
        Is Duplicative of His Breach of Contract Claim. ........................................... 13

    C.   Plaintiff Has Recycled His Breach of Contract Claim Into An Improper
        Action For Fraudulent Inducement. .......................................................... 14

    D.   Plaintiff Cannot Maintain a Claim for Negligent Misrepresentation. ............. 15

POINT III

PLAINTIFF'S CLAIM FOR UNPAID WAGES IN VIOLATION OF NEW
YORK LABOR LAW § 193 MUST BE DISMISSED BECAUSE § 193 DOES NOT
APPLY TO CLAIMS FOR UNPAID "WAGES." ..................................................... 16

POINT IV

PLAINTIFF FAILS TO PLEAD A VIOLATION OF NEW YORK LABOR LAW § 215
.................................................................................................................. 18

POINT V

PLAINTIFF FAILS TO STATE A COGNIZABLE CAUSE OF ACTION FOR
DEFAMATION ........................................................................................................... 20

CONCLUSION .................................................................................................................. 23

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abraham v. Am. Home Mortg. Servicing*,
   947 F. Supp. 2d 222 (E.D.N.Y. 2013) ..................................................................................7

*Albert v. Loksen*,
   239 F.3d 256 (2d Cir. 2001)..............................................................................................21

*Alter v. Bogoricin*,
   1997 U.S. Dist. LEXIS 17369 (S.D.N.Y. Nov. 4, 1997)...................................................9, 10

*Anas v. Brown*,
   269 A.D.2d 761 (4th Dep't 2000)......................................................................................21

*Antolino v. Distrib. Mgt. Consolidators Worldwide, LLC*,
   2011 N.Y. Misc. LEXIS 5737 (N.Y. Sup. 2011)...................................................................19

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................................................................6

*Baguer v. Spanish Broad. Sys., Inc.*,
   2007 U.S. Dist. LEXIS 70793 (S.D.N.Y. Sept. 20, 2007)......................................................12

*Baker v. Norman*,
   226 A.D.2d 301 (1st Dep't 1996) ......................................................................................14

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)........................................................................................................5, 6

*Benevento v. RJR Nabisco, Inc.*,
   1993 U.S. Dist. LEXIS 6226 (S.D.N.Y. Apr. 1, 1993)............................................................9

*Benham v eCommission Solutions, LLC*,
   118 A.D.3d 605 (1st Dep't 2014) ......................................................................................10

*Bolt Elec. v. City of N.Y.*,
   53 F.3d 465 (2d Cir. 1995)..................................................................................................6

*Cabrera Capital Mkts., LLC v. Further Lane Secs., L.P.*,
   2013 U.S. Dist. LEXIS 142608 (S.D.N.Y. Sept. 25, 2013)......................................................8

*CAC Grp. Inc. v. Maxim Grp. LLC*,
   523 F. App'x 802 (2d Cir. 2013) .........................................................................................8

*Celle v. Barclays Bank P.L.C.*,
    48 A.D.3d 301 (App. Div. 1st Dep't 2008) ...........................................................................13

*Celle v. Filipino Reporter Enters. Inc.*,
    209 F.3d 163 (2d Cir. 2000) .................................................................................................22

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002) ...................................................................................................3

*Clark-Fitzpatrick, Inc. v. Long Island R.R.*,
    70 N.Y.2d 382 (1987) ...........................................................................................................15

*Cohen v. Avanade, Inc.*,
    874 F. Supp. 2d 315 (S.D.N.Y. 2012) .....................................................................................7

*Comtomark, Inc. v. Satellite Commc'n Network*,
    116 A.D.2d 499 (1st Dep't 1986) ..........................................................................................14

*Concesionaria DHM, S.A. v. Int'l Fin. Corp.*,
    307 F. Supp. 2d 553 (S.D.N.Y. 2004) ...................................................................................13

*Dailey v. Tofel, Berelson, Saxl & Partners*,
    273 A.D.2d 341 (2d Dep't 2000) ...........................................................................................14

*Dalton v. Union Bank of Switzerland*,
    134 A.D.2d 174 (1st Dep't 1987) ..........................................................................................12

*Daub v. Future Tech. Enter., Inc.*,
    65 A.D.3d 1004 (2d Dep't 2009) ...........................................................................................15

*Dillon v. City of New York*,
    261 A.D.2d 34 (1st Dep't 1999) ............................................................................................22

*Emmons v. City Univ. of N.Y.*,
    715 F. Supp. 2d 394 (E.D.N.Y. 2010) ...................................................................................12

*Epifani v. Johnson*,
    65 A.D.3d 224 (2d Dept. 2009) .............................................................................................18

*Follender v. Prior*,
    63 A.D.3d 1458 (3d Dept. 2009) .............................................................................................8

*Gargiulo v. Forster & Garbus, Esqs.*,
    651 F. Supp. 2d 188, 192 (S.D.N.Y. 2009) ...........................................................................20

*Gebhardt v. Allspect, Inc.*,
    96 F. Supp. 2d 331 (S.D.N.Y. 2000) .......................................................................................6

*Goldberg v. Jacquet*,
    667 F. App'x 313 (2d Cir. 2016) ...................................................................18

*Gottlieb v. Kenneth D. Laub & Co., Inc.*,
    82 N.Y.2d 457 (1993) ...................................................................................18

*Greenman-Pedersen, Inc. v. Levine*,
    37 A.D.3d 250 (1st Dep't 2007) ...................................................................16

*Grier v. Johnson*,
    232 A.D.2d 846 (3d Dep't 1996) ..............................................................21, 22

*Harris v. City of N.Y.*,
    186 F.3d 243 (2d Cir. 1999) .............................................................................6

*Jensen v. AR Glob. Invs., LLC*,
    2020 U.S. Dist. LEXIS 49255 (S.D.N.Y. Mar. 20, 2020) ...........................17

*Joyce v. Thompson Wigdor & Gilly, LLP*,
    2008 U.S. Dist. LEXIS 43210 (S.D.N.Y. June 3, 2008) ..............................16

*JPMorgan Chase Bank N.A. v. IDW Grp. LLC*,
    2009 U.S. Dist. LEXIS 9207 (S.D.N.Y. Feb 9, 2009) .................................13

*Kaye v. Grossman*,
    202 F.3d 611 (2d Cir. 2000) ...........................................................................12

*Kelly v. Xerox Corp.*,
    256 A.D.2d. 311 (2d Dept. 1998) ..................................................................18

*Lasalle Bank Nat'l Assoc. v. Citicorp Real Estate, Inc.*,
    2003 U.S. Dist. LEXIS 4315 (S.D.N.Y. Mar. 19, 2003) .............................16

*Liberman v. Gelstein*,
    80 N.Y.2d 429 (1992) ..............................................................................21, 22

*Martin v. Schumacher*,
    52 N.Y.2d 105 (1981) .................................................................................8, 9

*Martz v. Incorporated Village of Valley Stream*,
    22 F.3d 26 (2d Cir. 1994) ...............................................................................18

*McKernin v. Fanny Farmer Candy Shops, Inc.*,
    176 A.D.2d 233 (2d Dep't 1991) ...................................................................14

*Mendez v. Bank of Am. Home Loans Servicing, LP*,
    840 F. Supp. 2d 639 (E.D.N.Y. 2012) ..........................................................13

*Monagle v. Scholastic, Inc.*,
   2007 U.S. Dist. LEXIS 19788 (S.D.N.Y. Mar. 9, 2007) ......................................................17

*Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*,
   861 F. Supp. 2d 344 (S.D.N.Y. 2012).......................................................................................7

*Nicholls v. Brookdale Univ. Hosp. Med. Ctr.*,
   2004 U.S. Dist. LEXIS 12816 (E.D.N.Y. 2004)......................................................................19

*Pachter v. Bernard Hodes Group, Inc.*,
   10 N.Y.3d 609 (2008) ..............................................................................................................17

*Perella Weinberg Partners LLC v. Kramer*,
   58 N.Y.S.3d 384 (App. Div. 2017) ...........................................................................................17

*R.G. Grp., Inc. v. Horn & Hardart Co.*,
   751 F.2d 69 (2d Cir. 1984).........................................................................................................7

*Rojo v. Deutsche Bank*,
   2010 U.S. Dist. LEXIS 62796 (S.D.N.Y. June 23, 2010).........................................................12

*Sborgi v. Green*,
   281 A.D.2d 230 (1st Dep't 2001) .............................................................................................22

*Scholastic, Inc. v. Stouffer*,
   124 F. Supp. 2d 836 (S.D.N.Y. 2000).......................................................................................20

*Stukuls v. New York*,
   42 N.Y.2d 272 (N.Y. 1977) ......................................................................................................21

*Subaru Distribs. Corp. v. Subaru of Am., Inc.*,
   425 F.3d 119 (2d Cir. 2005).......................................................................................................6

*Thai v. Cayre Grp., Ltd.*,
   726 F. Supp. 2d 323 (S.D.N.Y. 2010)..........................................................................20, 21, 22

*Tierney v. Capricorn Investors, L.P.*,
   189 A.D.2d 629 (1st Dep't 1993) .............................................................................................15

*Underdog Trucking, LLC v. Verizon Servs. Corp.*,
   2010 U.S. Dist. LEXIS 72642 (S.D.N.Y. July 20, 2010) ........................................................13

*Vanderburgh v. Porter Sheet Metal, Inc.*,
   86 A.D.2d 688 (3d Dep't 1982)................................................................................................15

*Venture Manufacturing v. Matco Group, Inc.*,
   6 A.D.3d 850 (3d Dept. 2004) ...................................................................................................8

v

*Wiggins v. Hain Pure Protein Corp.*,
  829 F. Supp. 2d 231 (S.D.N.Y. 2011)................................................................18

*William Kaufman Org., Ltd. v. Graham & James, LLP*,
  269 A.D.2d 171 (1st Dep't 2000) .....................................................................15

*Williams v. Varig Brazilian Airlines*,
  169 A.D.2d 434 (1st Dep't 1991) .....................................................................21

*Winston v. Mediafare Entm't Corp.*,
  777 F.2d 78 (2d Cir. 1985)..................................................................................8

**Statutes**

N.Y. Lab. Law § 191 ...................................................................................................2, 17

N.Y. Lab. Law § 193 .............................................................................................. *passim*

N.Y. Lab. Law § 198 .................................................................................................17, 18

N .Y. Lab. Law § 215 ...................................................................................1, 2, 3, 18, 19

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)...............................................................................................1, 5

## <u>PRELIMINARY STATEMENT</u>

Corporate Defendant Stuart Dean Co., Inc. ("Stuart Dean" or the "Company"), and individually named Defendants, Adriene Bailey, Thomas Brown, Margaret Cullen, Scott Day, Chris Degan, Cathleen Degan-Nikas, Scott Halstead, Timothy Shea, and Kristen Schorp (together with Stuart Dean, the "Defendants") submit this Memorandum of Law in support of its Motion to Dismiss certain causes of action within Plaintiff Bruce Hallett's ("Plaintiff") Complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.  Plaintiff, the former President and Chief Executive Officer ("CEO") of Defendant Stuart Dean, commenced this action asserting the following claims against Defendants: (1) breach of contract for wrongful termination (Count One); (2) breach of contract for failure to pay bonus compensation (Count Two); (3) failure to pay wages in violation of New York Labor Law ("NYLL") § 193 (Count Three); (4) retaliation in violation of NYLL § 215 (Count Four); (5) promissory estoppel (Count Five); (6) breach of the implied covenant of good faith and fair dealing (Count Six); (7) fraudulent inducement (Count Seven); (8) negligent misrepresentation (Count Eight); and (9) defamation (Count Nine).  At a preliminary conference conducted on June 19, 2020, the Court approved the filing of this motion to dismiss. For the reasons that follow, Defendants move to dismiss Counts Two through Nine of Plaintiff's Complaint for failure to state a claim upon which relief can be granted.

Plaintiff's breach of contract claim for failure to pay bonus compensation (Count Two) must be dismissed because Plaintiff fails to allege the existence of a valid and enforceable agreement to pay remuneration under a Long Term Incentive Plan ("Plan").  On the contrary, Plaintiff readily admits "the Company failed to create a viable LTIP for [Plaintiff]". *See* Complaint ¶ 74.  Insofar as the Complaint fails to allege the existence of a fully-executed agreement between the parties, and instead alleges a mere agreement to agree, Plaintiff cannot state a claim for breach

1

of contract.  Moreover, Plaintiff fails to plead facts demonstrating he was entitled to payment of an annual bonus upon termination of his Employment Agreement.  Indeed, the Complaint and its attachments demonstrate an absence of any such language entitling Plaintiff to payment of an annual bonus upon termination. *See* Complaint, Document 1-1 (defining and limiting Plaintiff's "Accrued Rights" to Plaintiff's Base Salary, reimbursement for expenses, employee benefits).

Plaintiff's claim of promissory estoppel (Count Five) must be dismissed because such claim is not available in the context of alleged employment-related promises.  Even assuming a promissory estoppel claim was cognizable in the employment context, such claim must be dismissed as it is duplicative of Plaintiff's breach of contract claims.  Similarly, Plaintiff's claims for breach of the implied covenant of good faith and fair dealing (Count Six), fraudulent inducement (Count Seven), and negligent misrepresentation (Count Eight) must be dismissed as each claim is duplicative of Plaintiff's breach of contract claims.  New York courts do not recognize separate tort claims arising from a breach of contract, and instead view a breach of such duties as mere breaches of the underlying contract.  Plaintiff's failure to allege Defendants owed a legal duty independent from the underlying Employment Agreement is fatal to his claims.

Plaintiff's NYLL § 193 claim (Count Three) must be dismissed as Plaintiff fails to allege a specific deduction from his wages.  Instead, Plaintiff alleges "Defendants failed to pay [him] his annual bonus and other incentive compensation[.]" *See* Complaint ¶ 82.  New York courts routinely dismiss such claims as it is well established that general withholding of payment is not considered a "deduction" within the meaning of NYLL § 193.  Even assuming Plaintiff intended to state claim under NYLL § 191, such a claim would similarly fail as it is well established that employees serving in an executive capacity do not fall under NYLL § 191. Similarly, Plaintiff's retaliation claim under NYLL § 215 (Count Four) must fail because Plaintiff fails to

plead any facts demonstrating he complained to Defendants about a specific violation of the NYLL.  In fact, by Plaintiff's own admission, he only complained that failure to pay his bonus compensation "constituted a material breach of his Employment Agreement". *See* Complaint ¶ 90. Moreover, Plaintiff's retaliation claim must be dismissed because Plaintiff failed to satisfy the statutory prerequisite to bringing such a claim when he failed to serve notice of the action upon the attorney general. *See* New York Lab. Law § 215(2)(b).

Finally, Plaintiff's claim of defamation (Count Nine) must be dismissed because Plaintiff fails to allege Defendants "published" Plaintiff's termination letter to a third party. Plaintiff's defamation claim must similarly fail because Plaintiff fails to plead facts sufficient to overcome the common interest privilege.  Moreover, Plaintiff fails to plead facts supporting the inference that the termination letter constituted defamation *per se*, instead merely reciting the standard for such a claim.

For the reasons discussed herein, Defendants respectfully requests this Court to grant this motion and dismiss Counts Two through Nine of Plaintiff's Complaint.

### STATEMENT OF FACTS[1]

**A.    Plaintiff's Employment With Stuart Dean.**

Plaintiff joined Defendant Stuart Dean's Board of Directors in 2011. *See* Complaint ¶ 26.  After seven (7) years as a member of the Board, in or about March 2018, Defendant Stuart Dean hired Plaintiff to serve as President and CEO of the Company. *See* Complaint ¶ 24. Accordingly, on or about March 12, 2018, Plaintiff negotiated and entered into an Employment

---

[1]     Defendants' Statement of Facts is derived from the material allegations of the Complaint, which are assumed true solely for the purposes of this motion, the documents annexed thereto, and the documents incorporated by reference therein.  *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir. 2002) ("the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporation in it by reference").

Agreement with Defendant Stuart Dean. *See* Complaint ¶ 29; *see also* Complaint, Document 1-1 (the "Employment Agreement"). The Employment Agreement captured all of the material terms of the parties' employment arrangement. Pursuant to the Employment Agreement, Plaintiff would receive an Annual Base Salary of $425,000 and an Annual Bonus with a target payout of $175,000, or 40% of Plaintiff's Base Salary, whichever was greater. *See* Complaint, Document 1-1, Sections 3 and 4. Additionally, Plaintiff was entitled to participate in the Company's employee benefit plans (the "Employee Benefits"), including health and dental insurance, flexible spending account, life insurance, short and long-term disability insurance, the Company's 401(k) Retirement Plan, and a $5,000 contribution which could be applied in lieu of the Company's payment of any insurance premiums. *See id.* at Section 8. The Employment Agreement also referenced Plaintiff's potential participation in a Long Term Incentive Plan ("LTIP"), the terms of which would be mutually agreed upon by Defendant Stuart Dean and the Plaintiff. *See id.* at Section 7. Plaintiff does not allege, nor can he, that the parties ever agreed upon terms and entered into a formalized LTIP.

Section 10 of the Employment Agreement outlined Plaintiff's rights upon termination. *See id.* at Section 10. Pursuant to that Section, if Plaintiff was terminated "with Cause", he would be entitled to receive: his Base Salary through the date of termination, reimbursement of any unreimbursed business expenses, and such Employee Benefits, if any, as to which Plaintiff may be entitled under the aforementioned employee benefit plans (collectively, the "Accrued Rights"). *See id.* at Section 10(a)(iii). If Plaintiff was terminated "without Cause", he would be entitled to receive: the Accrued Rights, continued payment of Plaintiff's Base Salary for a period of six (6) months, and reimbursement of Plaintiff's COBRA premiums for a period of twelve (12) months. *See id.* at Section 10(c)(iii).

B.       **Plaintiff's Termination from Defendant Stuart Dean.**

On or about March 7, 2020, Defendant Timothy Shea, Chairman of the Stuart Dean Board of Directors, informed Plaintiff the Board "was going in a different direction" and that Plaintiff would be terminated by "unanimous vote" of the Board the following day. *See* Complaint ¶ 48. Defendant Shea indicated he would recommend to the Board that Plaintiff receive payout of his 2019 performance bonus in exchange for Plaintiff signing a general release. *Id.* On March 8, 2020, Defendants sent Plaintiff a Notice of Termination. *See* Complaint ¶ 49; *see also* Complaint, Document 1-2. The letter explained that if the Company designated Plaintiff's termination as "no cause", he would receive a Separation Agreement and General Release pursuant to Section 10 of the Employment Agreement. *See* Complaint, Document 1-2. On March 13, 2020, Defendants sent Plaintiff a letter confirming his termination effective March 8, 2020. *See* Complaint ¶ 50; *see also* Complaint, Document 1-3. The letter further confirmed Defendants belief that Plaintiff "engaged in acts of willful misconduct in connection with [his] duties as CEO as it relates to unapproved and prohibited negotiations with a potential business partner thereby warranting termination under Section 10(a)(ii)(D) [of the Employment Agreement]." *Id.* Despite the Company's designation of Plaintiff's termination as "with Cause", Defendants nevertheless offered to construe Plaintiff's termination as without cause in exchange for signing an Agreement and General Release. *Id.* Plaintiff does not allege he accepted Defendants' offer.

<u>**STANDARD OF REVIEW**</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedure requires dismissal where a plaintiff fails to state a claim upon which relief may be granted. "[A] plaintiff's obligation to provide the 'grounds' of his [or her] 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). On such a motion, the

Court "must accept as true the factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff." *See Bolt Elec. v. City of N.Y.*, 53 F.3d 465, 469 (2d Cir. 1995) (internal citations omitted); *see also Harris v. City of N.Y.*, 186 F.3d 243, 247 (2d Cir. 1999).  To avoid dismissal, however, Plaintiff must do more than plead mere "conclusory allegations or legal conclusions masquerading as factual conclusions." *Gebhardt v. Allspect, Inc.,* 96 F. Supp. 2d 331, 333 (S.D.N.Y. 2000).

After the Court winnows conclusory statements from a complaint and assumes any remaining factual allegations to be true, the Court must determine whether the complaint pleads "a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570).  To survive a motion to dismiss, Plaintiff must plead factual allegations with sufficient specificity "to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555 (dismissing complaint where plaintiffs had not "nudged their claims across the line from conceivable to plausible").  In other words, Plaintiff's Complaint must be dismissed if it does not contain sufficient factual, non-conclusory allegations to allow the Court to "draw the reasonable inference that … [D]efendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  Finally, in deciding the instant motion, "the court may consider any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint." *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005).

**ARGUMENT**

**POINT I**

**PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT WITH RESPECT TO THE INCENTIVE COMPENSATION ALLEGEDLY DUE PURSUANT TO PLAINTIFF'S EMPLOYMENT AGREEMENT**

Plaintiff cannot maintain a contract claim for any remuneration associated with an LTIP because no such contract existed. To plead a breach of contract claim under New York law, a plaintiff must allege: "(1) the existence of a contract, (2) performance by the party seeking recovery, (3) non-performance by the other party, and (4) damages attributable to the breach." *Abraham v. Am. Home Mortg. Servicing*, 947 F. Supp. 2d 222, 235 (E.D.N.Y. 2013) (Kuntz, J.) (internal citation omitted). Where a plaintiff fails to plead any element of his or her breach of contract claim, the claim is subject to dismissal on a motion to dismiss. *See, e.g., Id.; Cohen v. Avanade, Inc.,* 874 F. Supp. 2d 315, 321 (S.D.N.Y. 2012) (dismissing breach of contact claim where plaintiff failed to plead the existence of "a valid contract between the parties"). Here, Plaintiff fails to plead the elements of a plausible breach of contact claim.

**A.**   **Plaintiff Does Not Allege The Existence Of A Valid And Enforceable Long Term Incentive Plan.**

"Under New York Law, if the parties do not intend to be bound by an agreement until it is in writing and signed then there is no contract until that event occurs." *R.G. Grp., Inc. v. Horn & Hardart Co.,* 751 F.2d 69, 74 (2d Cir. 1984); *see Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC,* 861 F. Supp. 2d 344, 355 (S.D.N.Y. 2012) ("where the parties contemplate further negotiations and the execution of a formal instrument, a preliminary agreement does not create a binding contract") (internal citation omitted). To determine whether parties to a negotiation intended to be bound by a preliminary agreement, prior to the execution of a formal written instrument, courts evaluate the factors enumerated by the Second Circuit in *Winston v.*

7

*Mediafare Entm't Corp.:* "(1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing." *Cabrera Capital Mkts., LLC v. Further Lane Secs., L.P.*, 2013 U.S. Dist. LEXIS 142608, at *12 (S.D.N.Y. Sept. 25, 2013) (citing *Winston*, 777 F.2d 78, 80 (2d Cir. 1985)).  "[A] strong presumption [exists] against finding binding obligations in agreements which include open terms, call for future approvals, and expressly anticipate future preparation and execution of contract documents."  *Id.* (internal citation omitted).

In applying this analytical framework, courts look to the "language in the correspondence" between the parties and the terms of the proposed agreement for evidence of intent.  *Id.*  Where correspondence between the parties suggests the parties intended to execute a formal written agreement at the conclusion of negotiations, courts have found the parties did not intend to be bound in the absence of a written instrument.  *CAC Grp. Inc. v. Maxim Grp. LLC*, 523 F. App'x 802, 804 (2d Cir. 2013); *Cabrera Capital Mkts., LLC*, 2013 U.S. Dist. LEXIS 142608, at *16-17.  Similarly, when parties agree to a basic principle, but simultaneously agree to discuss or formalize the terms of that agreement at a future time, a binding contract *is not* created at that time.  *See Follender v. Prior*, 63 A.D.3d 1458, 1459 (3d Dept. 2009); *Venture Manufacturing v. Matco Group, Inc.*, 6 A.D.3d 850, 851 (3d Dept. 2004).  New York courts will view such an agreement as "a mere agreement to agree" and will not enforce the agreement absent formalized materials terms. *See Martin v. Schumacher*, 52 N.Y.2d 105, 109-110 (1981) (holding that a lease renewal "to be agreed upon" was not an enforceable contract because "a mere agreement to agree, in which a material term is left for future negotiations, is unenforceable.").  Where the material

term left for future negotiations is a compensation clause, such a clause is sufficient and enforceable only if the amount of compensation can be determined "in accordance with the terms of the agreement without any further expression by the parties." *Benevento v. RJR Nabisco, Inc.*, 1993 U.S. Dist. LEXIS 6226, at *5 (S.D.N.Y. Apr. 1, 1993).

    Here, it is clear from both the allegations within Plaintiff's Complaint, as well as from the express language of the Employment Agreement, that Defendants and Plaintiff did not enter into a valid and enforceable agreement concerning the Long-Term Incentive Plan.  As an initial matter, Plaintiff's Complaint states no less than five (5) times that Defendants failed to enter into, create, or provide a viable LTIP. *See* Complaint ¶¶ 8, 43, 74, 89, and 102.  Plaintiff cannot repeatedly decry Defendants' failure to enter into a viable LTIP while simultaneously claiming he is contractually entitled to receive additional incentive compensation by virtue of the non-existent LTIP.  The concepts are mutually exclusive.

    A review of Plaintiff's Employment Agreement unequivocally resolves the matter. Section 2(7) of the Employment Agreement, titled "Long Term Incentive Plan" provides:

> During the Employment Term, Executive shall be eligible to participate in the Company's Long Term Incentive Plan (the "LTIP") which *will be* mutually agreed by the Company and Executive"? [sic] The terms of the LTIP are subject to annual review by the Board.

*See* Complaint, Document 1-1, Section 2(7) (emphasis added).  The plain language of Plaintiff's Employment Agreement, particularly the use of the future tense in "will be mutually agreed", makes clear the parties intended to leave the LTIP to future negotiations.  Moreover, the provision neither contains a methodology for developing the LTIP nor refers to an extrinsic standard, event or condition from which such a formula could be calculated. *See Alter v. Bogoricin*, 1997 U.S. Dist. LEXIS 17369, at *18 (S.D.N.Y. Nov. 4, 1997) (citing *Martin*, 52 N.Y.2d at 110).

The parties' intention to leave the LTIP for future negotiations is especially clear when you compare that provision to "the precision with which the Employment Agreement addressed other terms of [P]laintiff's compensation". *Alter*, 1997 U.S. Dist. LEXIS 17369, at *18. Of particular note is Section 4 of the Employment Agreement addressing Plaintiff's annual bonus award. *See* Complaint, Document 1-1, Section 2(4).  Not only does Section 4 contain a specific target payout, the provision also identifies specific target components, outlines their weighted average, and attaches an Exhibit containing the Annual Bonus Plan for 2018. *Id.*  In the absence of such precision and detail, Section 2(7) concerning the alleged LTIP is nothing more than an "agreement to agree" and is thus unenforceable under a breach of contract theory. *Alter*, 1997 U.S. Dist. LEXIS 17369, at *18 (dismissing a breach of contract claim where Plaintiff's Employment Agreement failed to precisely detail Plaintiff's entitlement to a profit sharing plan); *see Benham v eCommission Solutions, LLC*, 118 A.D.3d 605, 606-07 (1st Dep't 2014) (holding that the parties had a "mere 'agreement to agree' that plaintiff should receive equity stake in defendant [company]", and finding the "failure of the parties to agree on the precise form of the equity stake cause[d] plaintiff's contract claim to fail for lack of definiteness in the material terms of her equity compensation." (internal citation omitted)).

**B.**     **Plaintiff Does Not Allege Facts Demonstrating His Entitlement to Payout of His Annual Bonus Upon Termination.**

Plaintiff's breach of contract claim arising from Defendants' alleged failure to pay Plaintiff's annual bonus must similarly be dismissed as Plaintiff does not allege, nor can he, any facts demonstrating he was entitled to payout of his annual bonus upon his termination.  Plaintiff argues in a conclusory manner that Defendants were obligated to pay the annual bonus due to Plaintiff for 2019 by virtue of Section 2(4) of the Employment Agreement.  *See* Complaint ¶ 72.  As noted above, Section 2(4) of the Employment Agreement contains specific language regarding

the target payout and metrics of the Annual Bonus Plan.  Noticeably absent from the provision, however, is any language entitling Plaintiff to payout of the bonus upon termination.  Such language is similarly absent from the remainder of the Employment Agreement, including Section 10 on "Termination". *See* Complaint, Document 1-1, Section 10.  Pursuant to Section 10(a)(iii), upon termination "for Cause", Plaintiff is entitled to payment of his Base Salary, reimbursement of expenses, and Employee Benefits (as defined in Section 8)). *Id.*  Nowhere in Section 10(a)(iii), nor in Section 10(c)(iii) regarding termination "without Cause", does it state that Plaintiff is entitled to payout of his Annual Bonus.  What is does state, however, is that "the provisions of this Section 10 shall exclusively govern Executive's rights upon termination of employment[.]"  *See* Complaint, Document 1-1, Section 10.  Clearly the parties intended Section 10 to contain all of the materials terms regarding any compensation due and owing to Plaintiff upon termination.  Had the parties intended for Plaintiff to receive payout of his Annual Bonus upon termination, such language would be contained within Section 10.  Nevertheless, the provision is absent of any such language.  Accordingly, Defendants could not have and did not breach the terms of any alleged promise to pay Plaintiff his Annual Bonus upon termination because no such material term existed within Plaintiff's Employment Agreement.

For the reasons set forth above, Count Two of Plaintiff's Complaint must be dismissed with prejudice.

## POINT II

### PLAINTIFF'S TORT CLAIMS MUST BE DISMISSED BECAUSE THEY ARE DUPLICATIVE OF, AND ARISE FROM THE SAME CONDUCT AS, PLAINTIFF'S BREACH OF CONTRACT CLAIMS

Plaintiff's Complaint contains four (4) tort claims, including: (1) promissory estoppel (Count Five); (2) breach of the implied covenant of good faith and fair dealing (Count

Six); (3) fraudulent inducement (Count Seven); and (4) negligent misrepresentation (Count Eight). For the reasons outlined below, each of these claims must be dismissed.

###### A.      Plaintiff Cannot State A Claim For Promissory Estoppel.

Courts within the Second Circuit routinely hold that a plaintiff may not state a claim for promissory estoppel arising from promises made in the employment context. *See, e.g.*, *Rojo v. Deutsche Bank*, 2010 U.S. Dist. LEXIS 62796, at *23-24 (S.D.N.Y. June 23, 2010) ("New York law, which governs here, does not recognize promissory estoppel in the employment context") (collecting cases); *Emmons v. City Univ. of N.Y.*, 715 F. Supp. 2d 394, 422 (E.D.N.Y. 2010) (same); *Baguer v. Spanish Broad. Sys., Inc.,* 2007 U.S. Dist. LEXIS 70793, at *14-15 (S.D.N.Y. Sept. 20, 2007) (same) (collecting cases). More specifically, allegations which suggest that a "defendant promised plaintiff employment at a certain salary with certain other benefits, which induced him to leave his former job and forego the possibility of other employment," do not, as a matter of law, state a claim for promissory estoppel. *Dalton v. Union Bank of Switzerland,* 134 A.D.2d 174, 177 (1st Dep't 1987).

To state a claim for promissory estoppel under New York law, a plaintiff must plead facts suggesting "(1) a clear and unambiguous promise; (2) reasonable and foreseeable reliance on that promise; and (3) injury to the relying party as a result of the reliance." *Kaye v. Grossman*, 202 F.3d 611, 615 (2d Cir. 2000).  Here, Plaintiff cannot state a claim for promissory estoppel with respect to any alleged promise made to him in the course of negotiating the terms of his employment. *See Rojo*, 2010 U.S. Dist. LEXIS 62796, at *23-24.

Even assuming Plaintiff could state a plausible promissory estoppel claim with respect to employment related promises, Plaintiff claim would fail because it is duplicative of his breach of contract claims.  "Where a plaintiff also alleges breach of a contract, a promissory estoppel claim is duplicative of a breach of contract claim unless the plaintiff alleges that the

defendant had a duty independent from any arising out of the contract." *Underdog Trucking, LLC v. Verizon Servs. Corp.*, 2010 U.S. Dist. LEXIS 72642, at *18 (S.D.N.Y. July 20, 2010) (citing *Celle v. Barclays Bank P.L.C.*, 48 A.D.3d 301 (App. Div. 1st Dep't 2008)).  Plaintiff fails to allege Defendants had a duty independent from those arising out of the Employment Agreement. Instead, Plaintiff directly ties Defendants' duty to the Employment Agreement, arguing the Company "promise[d] that he would be eligible to participate in the Company's LTIP *pursuant to his Employment Agreement*". *See* Complaint ¶ 101 (emphasis added).

### B.   Plaintiff's Breach of Implied Covenant of Good Faith and Fair Dealing Claim Is Duplicative of His Breach of Contract Claim.

Plaintiff's claim for breach of the implied covenant of good faith and fair dealing is subject to dismissal because it is merely duplicative of his breach of contract claim.  "[T]o simultaneously plead breach of contract and implied covenant claims under New York Law, a plaintiff must allege an implied duty that is consistent with the express contractual terms, but base its implied covenant theory on allegations that are distinct from the factual predicate for its contact claim."  *JPMorgan Chase Bank N.A. v. IDW Grp. LLC*, 2009 U.S. Dist. LEXIS 9207, at *16 (S.D.N.Y. Feb 9, 2009); *see Mendez v. Bank of Am. Home Loans Servicing, LP*, 840 F. Supp. 2d 639, 652 (E.D.N.Y. 2012) ("New York law will not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when it arises from the same allegations as a breach of contract claim").  A breach of the implied covenant of good faith and fair dealing claim which is merely duplicative of the plaintiff's breach of contract claim is subject to dismissal.  *See, e.g., Mendez*, 840 F. Supp. 2d at 652; *JPMorgan Chase Bank N.A.*, 2009 U.S. Dist. LEXIS 9207, at *16; *Concesionaria DHM, S.A. v. Int'l Fin. Corp.,* 307 F. Supp. 2d 553, 564 (S.D.N.Y. 2004) ("courts routinely dismiss a claim for breach of an implied covenant of good faith 'as redundant

where the conduct allegedly violating the implied covenant is also the predicate for breach . . . of an express provision of the underlying contract'") (internal citation omitted).

Here, Plaintiff's allegations in support of his breach of the implied covenant of good faith and fair dealing claim parrot his allegations supporting his breach of contract claims.  In each instance Plaintiff alleges Defendants breached the contract and/or covenant by failing to provide Plaintiff with an LTIP and terminating Plaintiff's employment based on pretextual misconduct. *Compare* Complaint ¶ 74 *with* Complaint ¶ 110; Complaint ¶ 68 *with* Complaint ¶ 111. Accordingly, Plaintiff's breach of good faith and fair dealing claim should be dismissed as duplicative.

### C.  Plaintiff Has Recycled His Breach of Contract Claim Into An Improper Action For Fraudulent Inducement.

Plaintiff's fraudulent inducement claim also cannot be maintained because he has asserted a breach of contract claim for the same contentions. It is well settled that where a claim to recover damages for fraud is premised upon an alleged breach of contractual duties and the supporting allegations do not concern representations which are collateral or extraneous to the terms of the parties' alleged agreement, a cause of action sounding in fraud does not lie.  *See Dailey v. Tofel, Berelson, Saxl & Partners*, 273 A.D.2d 341 (2d Dep't 2000); *see also McKernin v. Fanny Farmer Candy Shops, Inc.*, 176 A.D.2d 233, 234 (2d Dep't 1991).  Moreover, a contract action may not be converted into one for fraud by the mere additional allegation that the contracting party did not intend to meet his alleged contractual obligation.  *See Comtomark, Inc. v. Satellite Commc'n Network*, 116 A.D.2d 499, 500 (1st Dep't 1986); *Baker v. Norman*, 226 A.D.2d 301, 304 (1st Dep't 1996).

The allegations underlying Plaintiff's claim for fraudulent inducement do no more than restate Plaintiff's breach of contract claims.  Plaintiff's vague and duplicative allegations

regarding representations made by Defendants concerning his participation in an LTIP are central to the Employment Agreement he claims was breached.  Indeed, these allegations do not support a claim for fraud because there is no claim of a breach of a legal duty <u>independent</u> of the alleged employment contract.  *See, e.g., Tierney v. Capricorn Investors, L.P.*, 189 A.D.2d 629, 631-32 (1st Dep't 1993) (affirming dismissal of claim for fraudulent inducement which was entirely duplicative of the plaintiff's breach of contract claim because a cause of action for fraud does not arise when the only fraud charged relates to a breach of contract); *Vanderburgh v. Porter Sheet Metal, Inc.*, 86 A.D.2d 688, 688-89 (3d Dep't 1982) (claim for fraud was properly dismissed because plaintiffs' allegations of fraudulent misrepresentation relate to performance of the employment agreement and their theory of recovery was restricted to an action for breach of contract); *Daub v. Future Tech. Enter., Inc.*, 65 A.D.3d 1004 (2d Dep't 2009) (motion to dismiss properly granted where plaintiff's fraud claim failed to sufficiently plead there was a misrepresentation of material fact which was collateral to the contract and served as an inducement for the contract).  Accordingly, Plaintiff's duplicative fraud claim should be dismissed.

### D.  Plaintiff Cannot Maintain a Claim for Negligent Misrepresentation.

As with Counts Five through Seven, Plaintiff's negligent misrepresentation claim is duplicative of his breach of contract claims. Under New York law "a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated." *Clark-Fitzpatrick, Inc. v. Long Island R.R.*, 70 N.Y.2d 382, 389 (1987) (affirming dismissal of claim for gross negligence where plaintiff failed to allege a violation of a duty independent of a contract).  "This legal duty must spring from circumstances extraneous to, and not constituting elements of, the contract[.]" *Id.*  Thus, "[a]ctions for . . . negligent misrepresentation will not lie when the factual underpinning for the claim is duplicative of a breach of contract claim." *William Kaufman Org., Ltd. v. Graham & James, LLP*, 269 A.D.2d 171, 173

15

(1st Dep't 2000); *see also Greenman-Pedersen, Inc. v. Levine*, 37 A.D.3d 250, 250 (1st Dep't 2007). "Under New York law, where claims of negligence, breach of contract, breach of fiduciary duty, negligent misrepresentation, or fraudulent misrepresentation are premised on the same facts and seek identical relief…those claims are duplicative and must be dismissed." *Joyce v. Thompson Wigdor & Gilly, LLP*, 2008 U.S. Dist. LEXIS 43210, at *40 (S.D.N.Y. June 3, 2008).

In the Complaint, Plaintiff fails to, and cannot, allege Defendants owed a legal duty independent from those allegedly arising from his Employment Agreement.   In support of his negligent misrepresentation claim, Plaintiff once again points to the "promises [Defendants] made regarding the LTIP", the same alleged promise underscoring Plaintiff's breach of contract claim. *Compare* Complaint ¶ 73-74 *with* Complaint ¶ 123. Accordingly, Plaintiff's negligent misrepresentation claim must fail as a matter of law. *See Lasalle Bank Nat'l Assoc. v. Citicorp Real Estate, Inc.*, 2003 U.S. Dist. LEXIS 4315, at *15 (S.D.N.Y. Mar. 19, 2003) (dismissing a negligent misrepresentation claim where the misrepresentations that Plaintiff points to for its claim of negligent misrepresentation are the same allegedly false representations and warranties that Plaintiff points to for its breach of contract claim.)

## POINT III

## PLAINTIFF'S CLAIM FOR UNPAID WAGES IN VIOLATION OF NEW YORK LABOR LAW § 193 MUST BE DISMISSED BECAUSE § 193 DOES NOT APPLY TO CLAIMS FOR UNPAID "WAGES."

Plaintiff's cause of action for failure to pay wages in violation of the NYLL should be dismissed because NYLL §193 does not apply to claims for unpaid wages.  NYLL § 193 specifically governs an employer's *deductions* from an employee's wages. Under NYLL §193, employers are prohibited from making "any deduction from the wages of an employee" for "insurance premiums, pension or health and welfare benefits, contributions to charitable organizations, payments for United States bonds, payments for dues or assessments to a labor

organization, and similar payments for the benefit of the employee." N.Y. Lab. Law § 193 (1)(a)-(b); *see also Pachter v. Bernard Hodes Group, Inc.*, 10 N.Y.3d 609, 617 (2008).  To state a claim under NYLL § 193, "'a plaintiff must allege a specific deduction from wages and not merely a failure to pay wages.'" *Jensen v. AR Glob. Invs., LLC*, 2020 U.S. Dist. LEXIS 49255, at *15-16 (S.D.N.Y. Mar. 20, 2020) (citing *Goldberg v. Jacquet*, 667 F. App'x 313, 314 (2d Cir. 2016)).  It is well established that a "wholesale withholding of payment is not a 'deduction' within the meaning of Labor Law § 193." *Id.* (citing *Perella Weinberg Partners LLC v. Kramer*, 58 N.Y.S.3d 384, 390 (App. Div. 2017)).  Courts have routinely held that NYLL § 193 does not apply to claims for unpaid wages.  For example, in *Monagle v. Scholastic, Inc.*, 2007 U.S. Dist. LEXIS 19788, at *5 (S.D.N.Y. Mar. 9, 2007), the court rejected the plaintiff's claim for unpaid commissions under NYLL § 193 finding that that "[N.Y. Lab. Law § 193]  has nothing to do with failure to pay wages or severance benefits, governing instead the specific subject of making deductions from wages."

Here, Plaintiff fails to allege a specific deduction from his wages.  Instead, Plaintiff broadly alleges "Defendants failed to pay [him] his annual bonus and other incentive compensation owed under the LTIP." *See* Complaint ¶ 82.  Clearly, Plaintiff's claim for unpaid bonus compensation does not fall within the scope of permissible claims under NYLL §193.  Even assuming *arguendo* Plaintiff intended to state a claim for failure to pay wages under NYLL § 191, such a claim would similarly fail as executive employees are specifically excluded from that section of the law.  *See* N.Y. Lab. Law § 191; *see also Pachter*, 10 N.Y.3d at 616 ("employees serving in an executive . . . capacity do not fall under Section 191 of the Labor Law").  By his own admission Plaintiff served as the Chief Executive Officer for Defendant Stuart Dean. *See* Complaint ¶¶ 2, 24.  Accordingly, Plaintiff could not maintain a claim under NYLL § 191.

Additionally, Plaintiff fails to state a claim for remedies available under NYLL § 198(1-a), which does not itself provide a cause of action against an employer independent of an underlying Article 6 wage claim. *See Wiggins v. Hain Pure Protein Corp.*, 829 F. Supp. 2d 231, 242 (S.D.N.Y. 2011) (citing *Martz v. Incorporated Village of Valley Stream*, 22 F.3d 26, 30 (2d Cir. 1994) ("Section 198 merely provides employees with a mechanism to recover costs and expenses in connection with a successful litigation against an employer for failure to pay wages.")); *Gottlieb v. Kenneth D. Laub & Co., Inc.*, 82 N.Y.2d 457, 459 (1993) ("the intent of [§ 198(1-a)] is that the attorney's fees remedy provided therein is limited to wage claims based upon violations of one or more of the substantive provisions of Labor Law [A]rticle 6"). As Plaintiff cannot establish a violation of NYLL § 193, he cannot recover remedies for such a violation under NYLL § 198(1-a).

## POINT IV

## PLAINTIFF FAILS TO PLEAD A VIOLATION OF NEW YORK LABOR LAW § 215

Plaintiff alleges Defendants retaliated against him due to his complaints concerning Defendants' alleged breach of Plaintiff's Employment Agreement in violation of the New York Labor Law § 215. Beyond this conclusory allegation, the Complaint fails to state any facts related to an alleged Labor Law violation or any complaint about such a violation.

NYLL § 215 prohibits discharging an employee in retaliation for making a complaint that the employer "has violated any provision of this chapter, or because such employee has caused to be instituted a proceeding under or related to this chapter." N .Y. Labor Law § 215 (1). "'[T]his chapter' refers to any provision of the Labor Law." *Kelly v. Xerox Corp.*, 256 A.D.2d. 311, 312 (2d Dept. 1998). To survive a motion to dismiss for failure to state a Labor Law § 215 claim, "[a] plaintiff must allege that he or she complained about a specific violation of the Labor Law[.]" *Epifani v. Johnson*, 65 A.D.3d 224, 236 (2d Dept. 2009) (citation omitted). Where

a plaintiff fails to state with specificity which specific Labor Law the employer violated, New York courts will dismiss the claim for failure to state a cause of action. *See id.*; *see also Nicholls v. Brookdale Univ. Hosp. Med. Ctr.*, 2004 U.S. Dist. LEXIS 12816, at *13 (E.D.N.Y. 2004) (dismissing plaintiff's NYLL § 215 retaliation claim as "lacking a level of specificity sufficient to support a cause of action" because plaintiff failed to state "what alleged violation of New York's Labor Law triggered plaintiff's claim under Section 215").  Here, Plaintiff fails to allege he complained to Defendants about a specific violation of the Labor Law.  In fact, by his own admission, Plaintiff only complained about a potential "material breach of his Employment Agreement". *See* Complaint ¶ 90.  This deficiency is fatal to Plaintiff's Section 215 retaliation claim.

Even assuming *arguendo* Plaintiff had sufficiently alleged a specific violation of the Labor Law, his claim would nevertheless fail because Plaintiff failed to satisfy the statutory prerequisite to bringing a retaliation claim under NYLL § 215. Section 215(2)(b) requires that, "[a]t or before the commencement of any action under this section, notice thereof shall be served upon the attorney general by the employee." N .Y. Labor Law § 215 (2)(b). Plaintiff's Complaint, however, is devoid of any allegations that he notified the New York Attorney General of his retaliation claim. Therefore, for this additional reason, Plaintiff's Labor Law § 215 claim should be dismissed. *See* N.Y. Labor Law § 215 (b)(2); *Antolino v. Distrib. Mgt. Consolidators Worldwide, LLC*, 2011 N.Y. Misc. LEXIS 5737, at *7-8 (N.Y. Sup. 2011) ("Plaintiff has not alleged that he timely served the attorney general at, or prior to, this action's commencement on February 7, 2011…Since plaintiff notified the attorney general by letter dated April 20, 2011, he failed to timely comply with Labor Law § 215's requirement and, consequently, the third cause of

action is dismissed."). Accordingly, Plaintiff's Labor Law § 215 claim should be dismissed as a matter of law.

## POINT V

## PLAINTIFF FAILS TO STATE A COGNIZABLE CAUSE OF ACTION FOR DEFAMATION

Count Nine of Plaintiff's Complaint seeks to hold Defendants liable for defamation arising from Plaintiff's March 13, 2020 termination letter. "To state a claim for defamation under New York Law, the plaintiff must allege (1) a false statement about the plaintiff; (2) published to a third party without authorization or privilege; (3) through fault amounting to at least negligence on [the] part of the publisher; (4) that either constitutes defamation per se or caused 'special damages.'" *Thai v. Cayre Grp., Ltd.*, 726 F. Supp. 2d 323, 329 (S.D.N.Y. 2010) (citing *Gargiulo v. Forster & Garbus, Esqs.*, 651 F. Supp. 2d 188, 192 (S.D.N.Y. 2009) (internal citation omitted)). A defamation claim "is only sufficient if it adequately identifies 'the purported communication, and an indication of who made the communication, when it was made, and to whom it was communicated.'" *Id.* (citing *Scholastic, Inc. v. Stouffer*, 124 F. Supp. 2d 836, 849 (S.D.N.Y. 2000) (internal citation omitted)).   As an initial matter, Plaintiff fails to allege facts sufficiently demonstrating Defendants published the termination letter to a third party.  Plaintiff's Complaint simply states Defendants "sent a formal letter regarding [Plaintiff's] termination" on March 8, 2020, and "sent another termination letter on March 13, 2020". *See* Complaint ¶¶ 49, 50.  This deficiency alone is fatal to Plaintiff's defamation claim.

In addition, Plaintiff's defamation claim fails because the alleged defamatory statement is protected by a qualified common interest privilege and is not actionable as a matter of law. *See Thai*, 726 F. Supp. 2d at 335.  "A qualified privilege arises when a person makes a good-faith, bona fide communication upon a subject in which he or she has an interest, or a legal, moral

or societal interest to speak, and the communication is made to a person with a corresponding interest." *Grier v. Johnson*, 232 A.D.2d 846, 847 (3d Dep't 1996).  Because the common interest privilege is a qualified privilege which is broadly applied, the "parties need only have such a relation to each other as would support a reasonable ground for supposing an innocent motive for imparting the information." *Anas v. Brown*, 269 A.D.2d 761, 762 (4th Dep't 2000).  New York courts consistently have applied the qualified common interest privilege to statements made by employers.  *See Albert v. Loksen*, 239 F.3d 256, 272 (2d Cir. 2001) ("Communications by supervisors or co-workers made in connection with the evaluation of an employee's performance, including allegations of employee misconduct and communications regarding the reasons for an employee's discharge, fall within the privilege."); *Williams v. Varig Brazilian Airlines*, 169 A.D.2d 434, 438 (1st Dep't 1991) (holding that an employer "has the right, without judicial interference, to assess an employee's performance on the job").  Here, the alleged defamatory statement was contained in Plaintiff's termination letter, a document sent to Plaintiff by his employer, intending to impart news of Plaintiff's termination.  Such a letter clearly falls within the common interest privilege.

At the pleadings stage, Plaintiff can only defeat the privilege by alleging the defamatory statement "was motivated solely by [common law or constitutional] malice". *Thai*, 726 F. Supp. 2d at 330.  Actual malice is defined as "personal spite or ill will or culpable recklessness or negligence." *Stukuls v. New York*, 42 N.Y.2d 272, 279 (N.Y. 1977) (citation omitted).  "[S]pite or ill will refers not to defendant's general feelings about plaintiff, but to the speaker's motivation for making the defamatory statements. . . . If the defendant's statements were made to further the interest protected by the privilege, it matters not that defendant also despised plaintiff." *Liberman v. Gelstein*, 80 N.Y.2d 429, 439 (1992).  To defeat Defendants' common interest privilege defense,

Plaintiff must show that malice was the "one and only cause for the publication" of the alleged defamatory statements. *Id.* Accordingly, if there are reasons for the statement, other than actual malice, the qualified privilege is not lost. *Id.* In addition, "[c]onclusory allegations of malice, or charges based upon surmise, conjecture or suspicion, will not defeat a claim of qualified privilege." *Grier*, 232 A.D.2d at 849. *See also Dillon v. City of New York*, 261 A.D.2d 34, 40 (1st Dep't 1999) ("Actual malice is not supported in these pleadings where allegations of ill will and spite manifested by the letter rest solely on surmise and conjecture."); *Sborgi v. Green*, 281 A.D.2d 230 (1st Dep't 2001) (finding that statements made by the defendant, the bishop of the plaintiff's Church, in response to an inquiry from a prospective employer affiliated with the Church, were protected by the qualified common interest privilege and allegations of "suspicion, surmise and accusation are not enough to infer malice" to defeat the privilege). In the instant matter, Plaintiff fails to allege Defendants acted with malice in making any alleged defamatory statements. In fact, Plaintiff's Complaint is entirely devoid of the word "malice". As a result, Plaintiff cannot overcome application of the common interest privilege.

Finally, Plaintiff cannot maintain a claim of defamation *per se.* Under New York law, statements that are defamatory *per se* are actionable without "'pleading and proof of special damages.'" *Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 179 (2d Cir. 2000) (quoting *Davis v. Ross*, 754 F.2d 80, 82 (2d Cir. 1985)). "The line between statements that are defamatory *per se* and those that require proof of special damages remains fuzzy." *Id.* As a general rule, a statement that "tend[s] to injure the plaintiff in his or her trade, business or profession" is defamatory *per se* and does not require proof of special damages to be actionable. *Thai*, 726 F. Supp. 2d at 331 (quoting *Albert v. Loksen*, 239 F.3d 256, 271 (2d Cir. 2001)). To state a claim for defamation per se, however, Plaintiff must do more than "merely recite[] the standard for

defamation per se". *Thai*, 726 F. Supp. 2d at 336.  Plaintiff must plead facts to support the inference

that the alleged defamatory statement injured his trade, business, or profession. *Id.*  Here, Plaintiff

does nothing more than state in a conclusory manner that the "false and defamatory statements in

the [termination] letter constitute defamation *per se* because they tend to injure [Plaintiff] in his

trade, business, or profession." *See* Complaint ¶ 130.  Plaintiff fails to plead any facts to support

such an inference.  His failure to do so here is fatal to his claim.

Accordingly, Count Nine of Plaintiff's Complaint alleging defamation must be

dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, it is respectfully requested that the Court: (1) grant

Defendants' Motion to Dismiss Counts Two through Nine of the Complaint, with prejudice; and,

(2) award Defendants such other further relief as the Court may deem just and proper.

Dated: July 13, 2020
     New York, New York

Respectfully submitted,

JACKSON LEWIS LLP
*Attorneys for Defendants*
666 Third Avenue
New York, New York 10017
(212) 545-4000

By:    */s/ Michael A. Jakowsky*
       Michael A. Jakowsky, Esq.
       Lauren A. Parra, Esq.

To:    Tracy A. Warren, Esq.
      Ashley L. Milnes, Esq.
      Buchalter
      655 W. Broadway, Suite 1625
      San Diego, CA 92101

Lauren M. Paxton, Esq.
Calcagni & Kanefsky LLP
85 Broad Street, Suite 17031
New York, NY 10004

4831-7250-5282, v. 1