```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------x
BRUCE HALLETT,                      :
                                    :
        Plaintiff,                  :
                                    :    20-cv-3881 (JSR)
        -v-                         :
                                    :    OPINION & ORDER
                                    :
STUART DEAN CO., et al.,            :
                                    :
        Defendants.                 :
                                    :
-----------------------------------x
```

JED S. RAKOFF, U.S.D.J.

Plaintiff Bruce Hallett, the former Chief Executive Officer of Stuart Dean Co., brings this suit against Stuart Dean and various members of its Board of Directors, claiming he is owed various forms of additional compensation and damages. The defendants now move to dismiss eight of the nine counts of the complaint. For the reasons that follow, the motion is granted in part and denied in part.

## BACKGROUND

The following allegations are taken from the complaint, unless otherwise noted. The Court presumes them to be true solely for the purpose of this motion.

Bruce Hallett is the former CEO of Stuart Dean Company, Inc., a New York corporation operating across the U.S. and Canada, specializing in restoration and maintenance of architectural

surfaces.[1]   Hallett has served in executive capacities in various companies, including publications and publishers (TIME Magazine, Sports Illustrated, Murdoch Books, MyPublisher, PlayBill magazine). Compl., ECF No. 1, at ¶ 25.  From 2011 to 2018, Hallett served on Stuart Dean's Board of Directors. Id. ¶¶ 26-27.  While on the Board, he served on the Compensation Committee and, inter alia, helped to create a long-term incentive plan ("LTIP") for the then-CEO. Id. ¶ 45.  He worked with the firm PayGovernance in designing that plan, which "offered multi-million dollar payouts to the CEO if the value of Stuart Dean increased significantly during the period between 2013 and 2018." Id.  The right to these payouts "vested immediately in the event of a change of control." Id.

In 2018, Hallett was approached to become President and CEO of Stuart Dean. Id. ¶ 27.  He signed an agreement (the "Employment Agreement") on or about March 12, 2018. Id. ¶ 29.  The Employment Agreement is attached to the complaint. ECF No. 1-1.  The Chairman of the Board of Directors signed the Employment Agreement for Stuart Dean. Id. at 14.

The Employment Agreement provided for the following compensation:

---

[1] About Us - Stuart Dean, https://www.stuartdean.com/about/.

- A base salary of $425,000, which could not be decreased ("Base Salary");

- "an annual bonus award . . . with a target payout of $175,000, or 40% of Base Salary, whichever is greater, based upon the achievement of annual targets under a weighted plan comprising three components, i.e., profit, growth, and Board Specified Special objectives according to a 50-25-25 allocation thereof, subject to the terms and conditions of the Bonus Plan to be reviewed and approved annually by the Board" (the "Annual Bonus");

- certain vacation days, personal days, and holidays;

- benefits plans, including health, dental, and disability insurance ("Employee Benefits");

- reimbursement of qualifying business expenses;

- "perquisites" in the form of a parking allowance and a club allowance; and

- that Hallett "shall be eligible to participate in the Company's Long Term Incentive Plan (the 'LTIP') which will be mutually agreed by the Company and Executive [Hallett.][2] The terms of the LTIP are subject to annual review by the Board."

ECF No. 1-1, at ¶¶ 3-11.

---

[2] Typographical errors in this sentence here corrected.

According to the complaint, the Board "failed to create a viable LTIP during [Hallett's] two years as CEO." Compl. ¶ 43. "Many assurances were given during Compensation Committee reports to the Board that a long term incentive plan was imminent, but none was forthcoming." Id. In 2018, the Board proposed a plan "'in lieu of an LTIP' that provided compensation above and beyond salary and bonus based on 2019 revenue increases." Id. However, the complaint does not indicate whether that plan was ever finalized.

Early in 2019, the Chairman of the Board "assured" Hallett "that he could expect to be contacted by PayGovernance," the firm that had worked on the prior CEO's LTIP. Id. ¶ 45. In mid-2019, "[a] copy of the [prior CEO's LTIP] was . . . circulated to the Board . . . as a model." Id. In August 2019, the Board's minutes listed a target of January 17, 2020 to prepare a draft of the LTIP, and a target date of March 6, 2020 for Board approval. Id. ¶ 44.

On February 24, 2020, Hallett emailed the Compensation Committee regarding Stuart Dean's failure "to deliver an LTIP." Id. ¶ 46. On February 26, the Committee Chairman "responded . . . indicating that Hallett would not be receiving any LTIP, as he was no longer eligible given there was only a year left of his employment term." Id. Hallett "immediately responded to the Committee (copying Board Chairman Tim Shea), disputing their conclusion and stating that such failure constituted a material

breach of his Employment Agreement; citing, among other reasons, the possibility of a sale in the ensuing 12 months." Id. Hallett received no response. Id.

Meanwhile, under Hallett's leadership, the company "saw significant improvements reflected in the 2019 results." Id. ¶ 33. A potential acquiror, Pritchard Industries, approached a Stuart Dean executive in the fall of 2019. Id. ¶ 34. Hallett and two other Stuart Dean executives met with two Pritchard Industries executives shortly thereafter. Id. Hallett informed Tim Shea, Stuart Dean's Chairman of the Board of Directors, that a prospective buyer had approached them, without naming the prospective buyer, and Shea encouraged Hallett to continue informal discussions. Id. ¶ 35. Informal discussions with Pritchard continued through the fall and winter, and surveys of the Stuart Dean shareholders in late 2019 and early 2020 indicated that many were eager to sell. Id. ¶¶ 26-38. On or about March 11, Pritchard provided a letter to Stuart Dean indicating Pritchard's interest in a potential transaction. Id. ¶ 39.

However, four days prior to that letter, on March 7, 2020, Chairman Shea told Hallett by phone "that the Board 'was going in a different direction' and that he would be terminated by 'unanimous vote' of the Board the following day." Id. ¶ 48. The Chairman "declined to provide a specific reason, simply stating 'we're not getting into that.'" Id. "Nonetheless, Shea assured

Hallett that he would receive six [months'] severance pay . . . [and that Shea] would recommend to the Board that Hallett receive a performance bonus for 2019, assuming he agreed to sign a general release." Id. ¶ 48.

Hallett refused to resign. Id. The next day, March 8, 2020, he received a termination letter from Chairman Shea, followed by a second letter on March 13. The two letters are attached to the complaint. ECF Nos. 1-2, 1-3.

The Employment Agreement provides that Stuart Dean can terminate Hallett's employment either with or without cause. "Cause" is defined to include, among other things, "willful malfeasance or willful misconduct in connection with Executive's duties hereunder or any act or omission which is materially injurious to the financial condition or business reputation of the Company." ECF No. 1-1, § 10(a)(2). The Employment Agreement provides that, if terminated for cause, Hallett "shall be entitled to receive" the following (collectively, the "Accrued Rights"):

- his Base Salary through the date of termination,
- his Employee Benefits through the date of termination (e.g., health insurance), and
- reimbursement of business expenses incurred through the date of termination.

Id. § 10(a)(3). If terminated without cause, Hallett "shall be entitled to receive" those same Accrued Rights as well as (under

certain circumstances) a continuation of his Base Salary for six months and COBRA health insurance premiums for twelve months. <u>Id.</u> § 10(c)(3).

Chairman Shea did not specify during the March 7 phone call or in the March 8 letter whether Stuart Dean was terminating Hallett for cause.   Indeed, the March 8 letter expressed uncertainty on the matter, saying, "If the Company determines that there is no cause for your termination pursuant to Section 10 of the Employment Agreement, you will be provided with a Separation Agreement and General Release pursuant thereto." ECF No. 1-2.

Subsequently, however, in the March 13 letter, Stuart Dean asserted that it had fired Hallett for cause:   "The Company believes that you have engaged in acts of willful misconduct in connection with your duties as CEO as it relates to unapproved and prohibited negotiations with a potential business partner thereby warranting termination [for cause]."   ECF No. 1-3.   At the same time, the March 13 letter promised Hallett one form of compensation to which he only would have been entitled if he had been fired without case -- COBRA health insurance premiums for a year.   The letter also said that "the Company [will] [is willing] to construe your termination as without cause under Section 10, Subsection C [if you sign an Agreement and General Release]."   ECF No. 1-3 (brackets in original).

As noted, defendants now move to dismiss all but Count One of the nine counts of the complaint pursuant to Rule 12(b)(6), Fed. R. Civ. Prod.[3]

## LEGAL STANDARD

To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The Court must "accept]] all factual allegations in the complaint and draw[] all reasonable inferences in the plaintiff's favor." ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). If a complaint "pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 557). The Court may consider the Employment Agreement and termination letters because "the complaint is deemed to include any written instrument attached to it as an exhibit." Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002).

The Court is sitting in diversity jurisdiction, and Hallett sues under the statutory and common law of New York. Therefore, "the law to be applied . . . is the law of the state," Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938), in this case New York.

---

[3] Count One alleges that Hallett's termination was in breach of his employment contract.

## DISCUSSION

### I. Breach of Contract for Failure To Pay Bonus Compensation (Count Two)

In Count Two, Hallett claims that he was denied two distinct forms of bonus compensation to which he was contractually entitled: payments under the LTIP and his Annual Bonus for 2019. The Court addresses these two forms of compensation separately.

#### A. Breach of Contract for Failure To Provide, or Make Payments Under, an LTIP

With respect to Hallett's alleged entitlement to payments under an LTIP, defendants argue that "no such contract existed" -- only an "agreement to agree." Def'ts' Mem. in Support of Mot. to Dismiss, ECF No. 40, at 7-8.

"Under New York law, if the parties do not intend to be bound by an agreement until it is in writing and signed then there is no contract until that event occurs." R.G. Grp., Inc. v. Horn & Hardart Co., 751 F.2d 69, 74 (2d Cir. 1984); see also Joseph Martin, Jr., Delicatessen, Inc. v. Schumacher, 52 N.Y.2d 105, 109 (1981) ("[A] mere agreement to agree, in which a material term is left for future negotiations, is unenforceable."); Restatement (Second) of Contracts § 33 cmt. f (1981) ("The more important the uncertainty, the stronger the indication is that the parties do not intend to be bound.").

Section 7 of the Employment Agreement states that "[d]uring the Employment Term, [Hallett] shall be eligible to participate in

the Company's Long Term Incentive Plan (the 'LTIP') <u>which will be</u> <u>mutually agreed</u> by the Company and Executive [<u>i.e.</u>, Hallett]. The terms of the LTIP are subject to annual review by the Board." ECF No. 1-1, § 7 (emphasis added). Given the references to a future "mutual[] agree[ment]" regarding an LTIP, the Employment Agreement indicates on its face that at the time of execution, the parties did not intend to be bound to a specific LTIP. Hallett offers a grab bag of contrary arguments, but none can overcome the plain language of the contract.

1.   <u>This Issue Is Properly Considered on a Motion</u>
     <u>To Dismiss</u>

Hallett argues, as a threshold matter, that this issue is not properly before the Court on a motion to dismiss because it "goes to the intent of the Parties, [which is] beyond the pleadings." Pls.' Opp. to Mot. to Dismiss, ECF No. 44 ("Opp."), at 9. Hallett misunderstands the legal standard on a 12(b)(6) motion. It is true that the Court is not permitted to make factual determinations, but the Court is tasked with determining whether Hallett's allegations, presumed true, state a plausible claim. Put differently, contractual intent is ordinarily a matter derived from the plain language of the contract, and therefore is frequently subject to a determination on the pleadings as a matter of law.

         2.   Whether the Contract Legally Provides for the
               Parties To Be Bound to an LTIP Absent a Further
               Writing

     In Winston v. Mediafare Entm't Corp.  See 777 F.2d 78, 80 (2d

Cir. 1985), the Second Circuit, applying New York law, articulated

four "factors that help determine whether the parties intended to

be bound in the absence of a document executed by both sides."

Id.  The factors are

          (1) whether there has been an express reservation of the
          right not to be bound in the absence of a writing;
          (2) whether there has been partial performance of the
          contract; (3) whether all of the terms of the alleged
          contract have been agreed upon; and (4) whether the
          agreement at issue is the type of contract that is usually
          committed to writing.

Id.   The Second Circuit has applied the Winston factors in the

context of a motion to dismiss.   Attestor Value Master Fund v.

Republic of Argentina, 940 F.3d 825, 827 (2d Cir. 2019) (per

curiam).

              (a) "Whether there has been an express
                  reservation of the right not to be bound
                  absent a writing"

     Hallett recognizes that the first factor, "whether there has

been an express reservation of the right not to be bound absent a

writing," "is frequently the most important."  Opp. 12 (quoting

Galanis v. Harmonie Club of N.Y., 13cv4344, 2014 U.S. Dist. LEXIS

140591, at *29 (S.D.N.Y. Oct. 2, 2014)).  This makes sense: since

the ultimate question is whether the parties intended to be bound,

                                11

an express written reservation of their right <u>not</u> to be bound is difficult to rebut.

Here, the Employment Agreement uses the future tense to describe the parties' plan to reach an agreement regarding an LTIP. ECF No. 1-1, § 7 (Hallett "shall be eligible to participate in the Company's Long-Term Incentive Plan . . . <u>which will be mutually agreed</u> by the Company and Executive.") (emphasis added). Section 14(b) of the contract is also instructive. It provides that the Employment Agreement "contains the entire understanding of the parties with respect to the employment of Executive by the Company . . . [and] may not be altered, modified, or amended except by written instrument signed by the parties hereto." ECF No. 1-1, § 14(b).

Together, these provisions indicate on their face that the parties contemplated further negotiation, followed by mutual agreement reduced to writing -- <u>i.e.</u>, that on the issue of the LTIP, they reserved the right not to be bound until they reached further written agreement. Therefore, the first and most important <u>Winston</u> factor favors dismissal.

### (b)   *"Whether there has been partial performance of the contract"*

The second <u>Winston</u> factor concerns partial performance. Partial performance tends to show that the parties saw themselves as obligated to perform. Here, Hallett argues that the defendants

partially performed the contract by representing that an LTIP was imminent and circulating the prior CEO's LTIP as a model.

But even construed most favorably to plaintiff, while this may show that the defendants saw themselves as obligated to continue negotiations, it does not show that they saw themselves as obligated to make LTIP payments.  The New York Court of Appeals has stated that "definiteness as to material matters is of the very essence in contract law. . . . [I]t is rightfully well settled in the common law of contracts in this State that a mere agreement to agree, in which a material term is left for future negotiations, is unenforceable."  Joseph Martin, Jr., Delicatessen, Inc. v. Schumacher, 52 N.Y.2d 105, 109 (1981).  Thus, without more, evidence that the parties intended to be bound to negotiate an LTIP does not demonstrate Hallett's entitlement, on a breach of contract theory, to payment under an LTIP.

As the complaint repeatedly states, Stuart Dean never provided an LTIP, nor made any payment under an LTIP.  Therefore, Hallett alleges only that the defendants continued to negotiate, not that the defendants partially performed.  The second Winston factor favors dismissal.

> (c)   "Whether all of the terms of the alleged
>        contract have been agreed upon"

The third Winston factor asks whether the parties have agreed upon material terms.  Hallett concedes that "the LTIP provision

lacks a specific formula or method for calculating the incentive payments," but he argues this "does not render it unenforceable." Opp. 15.  He further argues that courts have held contracts to be enforceable despite ambiguity as to the precise method for calculating the amount owed.

Here, however, the Employment Agreement offers no indication of how an LTIP payment would be calculated.  Hallett's allegations suggest that LTIP payments could amount to millions, far more than any other component of Hallett's compensation package.  Compl. ¶ 45.  It cannot be said that the parties agreed on such a material terms when they did not determine either the quantum of the LTIP payments or the method for calculating them.

Consider, by contrast, the amount of detail in Section 4 of the contract, regarding Hallett's Annual Bonus.  ECF No. 1-1, § 4. Although the contract did not fix a dollar amount for Hallett's Annual Bonus, it established his entitlement to earn such a bonus, specified by when such a bonus must be paid, and provided somewhat detailed guidance for calculating it, along with a prior-year model as precedent.  The LTIP provision did nothing of the sort.

Because the Employment Agreement does not cover the material terms with respect to an LTIP, the third factor favors dismissal.

(d) **"Whether the agreement at issue is the type of contract that is usually committed to writing"**

The final Winston factor concerns whether the particular type of agreement -- here, an agreement to pay incentive compensation to an executive -- is usually committed to writing.

Because this dispute concerns whether a written agreement covered a particular subject, not whether an oral agreement was meant to bind the parties, this factor is less instructive. That said, the complaint alleges that the LTIP for the prior Stuart Dean CEO was developed by the Board's Compensation Committee, working with the firm PayGovernance, after the CEO had already been hired. This supports the notion, apparent on the face of the Employment Agreement, see ECF No. 1-1, §§ 7, 14, that at the time Hallett was hired the parties contemplated that they would subsequently negotiate the terms of the LTIP and then reduce them to writing.

Therefore, while not especially instructive in this case, the final factor also favors dismissal.[4]

---

[4] Hallett relies heavily on Smith v. Horsehead Industries, 90cv6993 & 90cv7006, 1995 U.S. Dist. LEXIS 9549 (S.D.N.Y. 1995). In Smith, as here, a company contended that an employment letter was too vague to be enforced with respect to incentive compensation. The employment letter listed as one form of compensation "Participation in Horsehead's Stock Incentive Program (to be established)." Id. at *5. But this is where the resemblance to the case at bar stops. Horsehead Industries had offered Smith the job by phone. The subsequent employment letter begins: "I have outlined below the basic terms of the offer as we discussed over

In short, after weighing all the relevant factors together, even when drawing all reasonable inferences in Hallett's favor, the Court finds as a matter of law that Hallett has not plausibly alleged that the parties intended that the Employment Agreement would bind Stuart Dean to make LTIP payments to Hallett. Rather, the contract is plain that the parties contemplated further negotiations that would ultimately lead to an LTIP, and an agreement to agree is not a binding contract under New York law. For these reasons, the portion of Count Two alleging breach of contract with respect to an LTIP must be dismissed.

---

the telephone." Id. at *13 (emphasis modified). In denying the defendant's summary judgment motion, the court reasoned that "[t]he employment letter invites reference to external sources, stating that it is an 'outline' of 'basic' terms previously discussed." Id. at *15. Looking outside the four corners of the contract, the court found that "the terms of Smith's employment letter . . . are supplemented both by the oral representations made to Smith . . . and by the drafts of equity participation plans and stock incentive agreements, several of which correspond closely to [oral promises allegedly made] to Smith." Id. Thus, there was "ample evidence upon which a reasonable juror could find that [Horsehead] intended to and did enter into an agreement with Smith pursuant to which Smith was assured participation in a specific type of stock incentive plan." Id. Furthermore, there was evidence to suggest that those oral promises contained a specific formula for calculating the payment: "10 percent of the equity of the company [would be] shared equally with the management team." Id.

Here, by contrast, Section 14(b) of the Employment Agreement forbids reference to outside sources, and the Employment Agreement fails to provide a method for calculating a payment under the LTIP. Therefore, Smith is readily distinguishable.

**B.   Annual Bonus**

In addition to LTIP payments, Count Two seeks an Annual Bonus for 2019.  The contract provides that Hallett

> shall be eligible to earn an annual bonus . . . based upon the achievement of annual targets under a weighted plan comprising three components, i.e., profit, growth, and Board Specified Special objectives according to a 50-25-25 allocation thereof, subject to the terms and conditions of the Bonus Plan to be reviewed and approved annually by the Board.  The Annual Bonus Plan for 2018 is attached as Exhibit A.  The Annual Bonus, if any, shall be paid to Executive no later than March 15 of the following year.

ECF No. 1-1, § 4.  In other words, Stuart Dean would have been required to pay Hallett's Annual Bonus for 2019, if any, by March 15, 2020, about one week after he was terminated.

Defendants argue that Count Two should be dismissed with respect to the Annual Bonus because of Section 10 of the Employment Agreement.  Section 10 states that it "shall exclusively govern Executive's rights upon termination of employment," and it does not mention entitlement to an Annual Bonus.  ECF No. 1-1, § 10. Because Hallett was terminated before Stuart Dean was required to pay an Annual Bonus for 2019, and because Section 10 does not mention entitlement to an Annual Bonus following termination, defendants contend that Hallett has not shown entitlement to an Annual Bonus for 2019.

Hallett admits that, under New York law, employees cannot prevail in suits for bonuses where the employer has absolute

discretion over issuance of the bonus.  But courts "may enforce an agreement to pay an annual bonus made at the onset of the employment relationship where such bonus constitutes an integral part of plaintiff's compensation package," Mirchel v. RMJ Securities Corp., 205 A.D.2d 388, 390 (1st Dep't 1994) (internal quotation marks omitted), and where "there exists a reasonable basis for calculating the bonus due," Thomson v. Saatchi & Saatchi Holdings, 958 F. Supp. 808, 825 (W.D.N.Y. 1997).  See also Fishoff v. Coty Inc., 634 F.3d 647, 653-654 (2d Cir. 2011) ("Discretion to modify or cancel an incentive . . . will not be implied if there exists no explicit contractual provision[] assigning the employer absolute discretion to pay such compensation.").

Here, drawing all inferences in favor of Hallett, he has plausibly alleged that the Annual Bonus was an integral part of his compensation package to which the parties agreed in advance and that his entitlement to such a bonus accrued at the end of 2019.  After all, the parties attached to the Employment Agreement the methodology for calculating the 2018 Annual Bonus, and 75% of that bonus calculation was tied to profits and operating revenue growth for calendar year 2018.  It is at least plausible that the parties intended that Hallett's entitlement to his Annual Bonus for 2019 was, likewise, tied to the calendar year.  Cf. Pachter v. Bernard Hodes Group, Inc., 10 N.Y.3d 609, 612 (2008) ("[T]he determination of when a commission is earned is governed by the

parties' express or implied agreement."). At oral argument on this motion, defendants argued that the exhibit related only to the Annual Bonus for the year 2018, but the three categories (profit, growth, and special objectives) are listed in the Employment Agreement itself, ECF No. 1.1 § 4, and defendants offer no reason to believe that in 2019 Stuart Dean would have abruptly begun measuring these metrics on something other than a calendar-year basis.

Because Hallett has plausibly alleged entitlement to an Annual Bonus that accrued at the end of 2019, for which a reasonably detailed method of calculation is specified in the Employment Agreement, he has stated a breach of contract claim for his 2019 Annual Bonus.

For these reasons, Count Two is dismissed with respect to Hallett's claim for payments under an LTIP, but defendants' motion is denied with respect to Hallett's claim under Count Two for a 2019 Annual Bonus.

## II. Quasi-Contract and Tort Claims

In addition to breach of contract claims, Hallett claims breach of the implied covenant of good faith and fair dealing, promissory estoppel, fraudulent inducement, and negligent misrepresentation (counts Five through Eight). Defendants raise several arguments for dismissal of these counts, with a common overarching theme: that these counts must be dismissed because

they are duplicative of, and arise from the same conduct as, the breach of contract claims.

### A.   Implied Covenant of Good Faith and Fair Dealing (Count Six)

Hallett seeks to recover under the covenant of good faith and fair dealing implicit in all New York contracts.[5] Hallett alleges that defendants violated the implied covenant by pretextually firing him for cause, thus seeking to prevent him from obtaining the fruits of his labor. See Thompson v. Advanced Armament Corp., LLC, 614 F. App'x 523, 525 (2d Cir. 2015) (affirming in pertinent part judgment against employer that pretextually fired employee "for cause" and holding that "[u]nder New York law, a defendant violates the implied covenant when it purposefully sabotages a plaintiff's ability to benefit under the contract").

Defendants move to dismiss the implied covenant claim as duplicative. See Concesionaria DHM, S.A. v. Int'l Fin. Corp., 307 F. Supp. 2d 553, 564 (S.D.N.Y. 2004) ("[C]ourts routinely dismiss a claim for breach of an implied covenant of good faith as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach . . . of an express provision of the underlying contract."). Hallett concedes that he

---

[5] Under New York law, violation of the implied covenant is not truly a separate injury, but "merely a breach of the underlying contract." Harris v. Provident Life & Acc. Ins. Co., 310 F.3d 73, 80 (2d Cir. 2002).

cannot prevail on both his Count One breach of contract claim for wrongful termination and his implied covenant claim under Count Six, but he argues that he can plead them in the alternative at this stage because they do not entirely rely on the same facts. Opp. at 23; see Spinelli v. Nat'l Football League, 903 F.3d 185, 206 (2d Cir. 2018).

Hallett has the better of this argument. Count One, Hallett's wrongful termination claim, remains in dispute. In the March 13, 2020 letter, Stuart Dean claimed that Hallett was properly terminated "for cause." Assume for the sake of argument that Hallett was properly fired for cause because of his communications with Pritchard. In that case, Count One of Hallett's complaint will fail. Nevertheless, Hallett's implied covenant claim might still succeed. Under the doctrine described in Thompson, there would remain an open question whether Hallett was induced to violate the contract. After all, Hallett alleges that Tim Shea, the Chairman of Stuart Dean's Board of Directors, encouraged him to continue informal communications with Pritchard.

Because Hallett has plausibly alleged that he could recover on his claim for breach of the implied covenant, even were he to fail on Count One, the claims are not coextensive. Accordingly, with respect to Count Six, the defendants' motion to dismiss is denied.

21

**B.   Promissory Estoppel (Count Five)**

Hallett also seeks to recover for promissory estoppel. Under
New York law, promissory estoppel requires "(1) a clear and
unambiguous promise; (2) reasonable and foreseeable reliance on
that promise; and (3) injury to the relying party as a result of
the reliance." Kaye v. Grossman, 202 F.3d 611, 615 (2d Cir. 2000).

Defendants move to dismiss the claim on three grounds. First,
defendants cite federal cases for the proposition that under New
York law, promissory estoppel claims are categorically barred in
the employment context. See Rojo v. Deutsche Bank, 2010 U.S. Dist.
LEXIS 62796, at *23-24 (S.D.N.Y. June 23, 2010) ("New York law
. . . does not recognize promissory estoppel in the employment
context."). However, at oral argument, defendants conceded that
they could not identify a New York state court case articulating
a categorical bar against bringing promissory estoppel claims in
the employment context. Nor did this Court find such a case. See
also Baguer v. Spanish Broad. Sys., 2007 U.S. Dist. LEXIS 70793,
*15-16, 4cv8393 (S.D.N.Y. 2007) ("[T]his Court is aware of no New
York State case that has . . . adopted a categorical rejection of
promissory estoppel in the employment context . . . .); Restatement
(Second) of Contracts § 90 cmt. b illus. 4 (1981) (applying
promissory estoppel in the employment context).

Defendants have not demonstrated that a single New York state
court has ever categorically barred promissory estoppel in the

employment context.   This Court, sitting in diversity, may not craft such a categorical bar on its own.  See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 497 (1941) (In a diversity case, "[t]he proper function of the . . . federal court is to ascertain what the state law is, not what it ought to be.").[6]

Second, defendant argues that Hallett could not reasonably have relied upon oral promises because of Section 14(b) of the Employment Agreement, which states, "This Agreement contains the entire understanding of the parties . . . [and] may not be altered, modified, or amended except by written instrument . . . ."

However, there is tension between Section 14 and Section 7, which explicitly contemplates that the parties will negotiate an LTIP that "will be mutually agreed by" the parties.  Given that the parties explicitly contemplated future negotiation, some promises made in connection with that negotiation -- e.g., promises that an LTIP would be circulated or considered by the Board by a

---

[6] Defendants cite one Appellate Division case, but it does not articulate a categorical bar against promissory estoppel in the employment context.  Rather, it holds in a single paragraph that "the fact that defendant promised plaintiff employment at a certain salary with certain other benefits, which induced him to leave his former job and forego the possibility of other employment in order to remain with defendant, does not create a cause of action for promissory estoppel."  Dalton v. Union Bank of Switzerland, 134 A.D.2d 174, 176, 520 N.Y.S.2d 764 (1987).  Here, Hallett alleges more than a mere promise to obtain employment -- he also alleges promises during subsequent negotiations regarding an LTIP.

particular date -- might not be read to "alter[], modify[], or amend[]" the Employment Agreement.

In any event, "the reasonableness of a plaintiff's reliance is a nettlesome and fact intensive question," FIH, LLC v. Found. Capital Partners LLC, 920 F.3d 134, 141 (2d Cir. 2019) (internal quotation marks omitted).  While "there may be circumstances where a general disclaimer or merger clause, together with an extensive roster of specifically negotiated factual warranties and representations, can lead to a conclusion that, in the particular circumstances of a case, no reasonable jury could find reasonable reliance" on an oral representation, id. at 145, for the most part "general disclaimers are insufficient to defeat reasonable reliance on material misrepresentations as a matter of law," id. at 141.  Here, since the Employment Agreement contemplates continued negotiation regarding an LTIP, Hallett has plausibly alleged that he reasonably could have relied upon oral promises with respect to negotiations regarding the LTIP.

Finally, the defendants argue that Hallett's promissory estoppel claim fails because he alleges no promise independent of the Employment Agreement.  Courts dismiss promissory estoppel claims as duplicative "unless the plaintiff alleges that the defendant had a duty independent from any arising out of the contract."  Underdog Trucking, LLC v. Verizon Servs. Corp., 9cv8918, 2010 Dist. LEXIS 72642, at *18 (S.D.N.Y. July 20, 2010).

Hallett responds that the defendants themselves have alleged that there is no valid, enforceable contract with respect to incentive compensation; "where Defendants dispute the existence of a valid, enforceable contract, Plaintiffs are permitted to proceed on both contractual and quasi-contractual theories." Piven v. Wolf Halderstein Adler Freeman & Herz L.L.P., 2010 U.S. Dist. LEXIS 27609, 8cv10578 (S.D.N.Y. 2010) (declining to dismiss promissory estoppel claim).

The Court agrees with Hallett. As stated above, the Court is dismissing Hallett's Count Two claim for breach of contract insofar as he seeks LTIP payments. Therefore, Hallett's promissory estoppel claim under Count Five is not entirely duplicative of his surviving breach of contract claim.

For these reasons, the defendants' motion to dismiss is denied with respect to Count Five.

### C. Fraudulent Inducement and Negligent Misrepresentation (Counts Seven and Eight)

Similarly, the defendants move to dismiss Hallett's fraudulent inducement and negligent misrepresentation claims as duplicative. They assert that the fraudulent inducement claim fails to plead a material misrepresentation that was collateral to the contract and that the negligent misrepresentation claim fails to plead a legal duty independent of the contract.

The fraudulent inducement and negligent misrepresentation claims are not duplicative for the same reason that the promissory estoppel claim is not. Because the Court is dismissing the Count Two breach of contract claim insofar as Hallett seeks LTIP payments, the alleged misrepresentations with respect to the LTIP and the alleged duty of trust and confidence in negotiations regarding the LTIP are collateral to the contract itself. Therefore, these claims are not duplicative of the breach of contract claim. The motion to dismiss is denied with respect to Counts Seven and Eight.

### III. Unpaid Wages in Violation of New York Labor Law § 193 (Count Three)

Hallett seeks to recover under a New York statute, New York Labor Law ("NYLL") Section 193, which provides that "[n]o employer shall make any deduction from the wages of an employee," except in certain circumstances (which no party argues are present here). An employee who prevails under Section 193 is entitled to, inter alia, the withheld wages, liquidated damages of equal amount, and attorney's fees. NYLL § 198.

Defendants argue that Section 193 does not apply for two reasons. First, they argue that it covers only deductions from an employee's wages, not completely withheld payments, like the LTIP payments and Annual Bonus at issue here. Second, they argue that

incentive compensation like the Annual Bonus and LTIP payments are not wages.

## A.   Whether Hallett Has Alleged a "Deduction"

Defendants argue that Stuart Dean's complete failure to make incentive and bonus payments does not constitute a "deduction" for purposes of Section 193.    An unpublished (and therefore non-precedential) Second Circuit summary order supports this reading.   Goldberg v. Jacquet, 667 Fed. Appx. 313, 314 (2d Cir. 2016) ("In order to state a claim for a violation of NYLL § 193, a plaintiff must allege a specific deduction from wages and not merely a failure to pay wages.").

Plaintiff responds with citations to several cases in which courts have found that withholding an entire payment, such as a bonus, qualified as a deduction for purposes of Section 193.   Opp. at 27 n.3.  Most importantly, Hallett identifies a New York Court of Appeals case, Ryan v. Kellogg Partners Institutional Servs., 19 N.Y.3d 1 (2012), affirming recovery under Section 193 of a bonus that was entirely withheld.

If this Court were construing the statute on a clean slate, the Second Circuit's interpretation would have much to recommend it.   As the panel explained, there is a difference between "not receiv[ing] wages to which [the employee] was entitled" and having wages "reduced in the manner prohibited by NYLL § 193." Goldberg, 667 Fed. Appx. at 314.   However, this Court is not writing on a

clean slate.   The New York Court of Appeals has held that a completely withheld bonus can be a "deduction" under § 193; thus, under New York law, plaintiff has alleged a "deduction."[7]

### B.   Whether These Incentive Payments Are "Wages"

Defendants' second argument is that the incentive payments at issue here are not "wages" for purposes of Section 193.[8]  New York Labor Law Section 190 defines "wages" to be "the earnings of an employee for labor or services rendered, regardless of whether the amount of earnings is determined on a time, piece, commission or other basis[, as well as] benefits or wage supplements as defined in [§ 198-c]," with exceptions not relevant here.   NYLL § 190. "'[B]enefits or wage supplements' includes, but is not limited to,

---

[7] See also Kolchins v. Evolution Markets, Inc., 31 N.Y.3d 100, 109, 96 N.E.3d 784 (2018) (Under NYLL § 193, "to the extent plaintiff's production bonus constituted 'earned wages' under the Labor Law, it was not subject to forfeiture."); Khurana v. Wahed Invest, LLC, 2020 U.S. Dist. LEXIS 4762, *34-3518cv233 (S.D.N.Y. Jan. 9, 2020) ("Although nothing in the text of [§ 193] suggests that it engrafts a statutory remedy onto what would otherwise be a common-law contract claim for a bonus payment, the New York Court of Appeals held squarely, in Ryan v. Kellogg Partners Institutional Servs., that an employer's failure to pay a 'guaranteed' and 'nondiscretionary' bonus, which 'had been earned and was vested before [plaintiff] left his job,' violated § 193 'and entitles [plaintiff] to an award of attorney's fees under Labor Law § 198(1-a).'"), report and recommendation adopted, 2020 U.S. Dist. LEXIS 14296 (S.D.N.Y., Jan. 22, 2020).

[8] Because defendants raised this argument for the first time in their reply brief, the Court authorized, and Hallett submitted, a short surreply on the issue.   ECF No. 47.

reimbursement for expenses; health, welfare and retirement benefits; and vacation, separation or holiday pay." NYLL § 198-c.

Defendants rely upon Truelove v. Northeast Capital & Advisory, Inc., 95 N.Y.2d 220, 224 (2000). Truelove was an employment dispute in which "Plaintiff's offer of employment stated that a bonus, if paid, would reflect a combination of the individual's performance and the company's performance." Id. at 222 (internal quotation marks and brackets omitted). In subsequent communications, the company provided more detail:

> [A] bonus/profit sharing pool would be established only if the firm generated a certain stated minimum of revenues and . . . the pool, once established, would be calculated pursuant to a graduated percentage schedule of firm revenues. . . . [B]onus/profit sharing distributions would be allocated in the CEO's sole discretion and would be paid in quarterly installments, with each payment contingent upon the recipient's continued employment at the firm. Employees were required to have an "acceptable" performance rating to participate in the bonus/profit sharing pool.

Id. at 222-23.

After plaintiff's departure, the company refused to provide the remaining installments of his bonus. Based on the plain text of the statute and the legislative history, the Court of Appeals found that his bonus was not "wages" and so no claim was cognizable under Section 193. In construing the term "wages," it reasoned that "[t]he terms of defendant's bonus compensation plan did not predicate bonus payments upon plaintiff's own personal productivity nor give plaintiff a contractual right to bonus

payments based upon his productivity.  To the contrary, the declaration of a bonus pool was dependent solely upon his employer's overall financial success." Id. at 224.  The Court of Appeals also considered that "plaintiff's share in the bonus pool was entirely discretionary and subject to the non-reviewable determination of his employer." Id.

By contrast, twelve years later, in Ryan v. Kellogg Partners Institutional Services, the New York Court of Appeals found that a bonus did constitute "wages" under Section 193.  Ryan testified that he was promised a $175,000 non-discretionary bonus to entice him to switch jobs.  The bonus was never paid.  The jury found for Ryan.  In affirming, the Court of Appeals distinguished Truelove on several grounds: Ryan's bonus was "expressly linked to his labor or services personally rendered . . . had been earned and was vested before he left his job  . . . [and] was guaranteed and non-discretionary as a term and condition of his employment."   19 N.Y.3d 1, 16 (2012).

A third relevant case is Kolchins v. Evolution Markets, Inc., 31 N.Y.3d 100, 109-10, 96 N.E.3d 784 (2018).  In Kolchins, the "plaintiff was eligible to receive a 'Production Bonus' that was 'based on [his] performance' each trimester, and which would be 'paid within two months of the close of a given trimester.'"  31 N.Y.3d 100, 103, 96 N.E.3d 784 (2018) (alteration in original). "[T]he total bonus pool available to the Eastern U.S. renewable

energy brokerage desk [that plaintiff managed] . . . [would] be no less than 55% of the Net Earnings of [that desk]." Id. at 103 n.2 (some alterations in original). Distinguishing Truelove, the Court of Appeals held that "language in the 2009 agreement . . . could be read as providing that plaintiff's bonus was predicated on his personal productivity, rather than solely on defendant's overall success. Moreover, the language of the 2009 agreement does not conclusively establish that the bonus was discretionary." Id. at 109-110. Although the bonus pool was tied to the performance of the desk, the court found it significant that "plaintiff managed that desk." Id. at 109.

Synthesizing these three cases, the Court distills three principles that New York courts apply to determine whether incentive compensation qualifies as "wages" for purposes of Section 193, i.e., whether the incentive compensation was (1) tied to personal productivity or to the performance of the company; (2) guaranteed or discretionary; and (3) vested or contingent.

With respect to Hallett's claim for a 2019 Annual Bonus, (1) the Employment Agreement states that Hallett's bonus was primarily tied to the company's profit and growth, not to his own performance. That said, 25% of Hallett's Annual Bonus was linked to "Board Specified Special objectives," which may have related to the company performance, to Hallett's labor or services, or to a combination of both. Moreover, in Kolchins, the New York Court of

Appeals noted that it was relevant that, although the availability of a bonus pool was tied to the performance of the desk as a whole, plaintiff managed that desk.  1 N.Y.3d at 109.  Likewise, 75% of Hallett's Annual Bonus was tied to Stuart Dean's performance, but the performance of the company could be said to reflect Hallett's performance as CEO.  (2) Based on Section 4 of the Employment Agreement, read in conjunction with the 2018 Annual Bonus plan attached to the Employment Agreement, one could plausibly infer that upon achievement of the specified objectives, entitlement to an Annual Bonus was guaranteed and non-discretionary.  (3) As previously discussed, Hallett has plausibly alleged that the Annual Bonus is tied to the calendar year such that it vested before he was terminated.

In short, Hallett has plausibly alleged that his 2019 Annual Bonus was linked in part to his own performance, was non-discretionary, and had vested before he was terminated. Therefore, he has plausibly alleged that his Annual Bonus constituted "wages" for purposes of Section 193.

With respect to LTIP payments, (1) the Employment Agreement offers no indication that they would be tied to Hallett's individual performance.  On the other hand, again, since Hallett was CEO, the performance of the company could be said to reflect his own performance.  (2) Based on the language of the contract itself, the parties may have expected the Board to retain more

discretion regarding when and under what circumstances to award LTIP payments, as opposed to Annual Bonus payments. Compare ECF No. 1-1, § 7 (Hallett "shall be eligible to participate" in the LTIP.) (emphasis added) with id. § 4 (Hallett "shall be eligible to earn an Annual Bonus" which bonus, "if any, shall be paid . . . no later than March 15 of the following year.") (emphasis added). (3) Finally, although the complaint alleges that, under the prior CEO's LTIP, entitlement to LTIP payments would have vested upon a change in ownership, the present Employment Agreement does not specify the same. Also, no change in ownership occurred prior to Hallett's termination.

It follows that Hallett has not plausibly alleged that payment under an LTIP was linked to his personal performance, was guaranteed and non-discretionary, and vested before his termination.

For these reasons, defendants' motion to dismiss Count Three is granted with respect to Hallett's claim for payments under an LTIP but denied with respect to Hallett's claim for a 2019 Annual Bonus.

## IV.  Retaliation Under NYLL § 215 (Count Four)

Hallett seeks to recover for retaliation in violation of New York Labor Law § 215. He alleges that when he complained about Stuart Dean's failure to provide him an LTIP, he complained about

a violation of New York Labor Law; he asserts that his termination was a result of that complaint.[9]

Defendants move to dismiss this cause of action for two reasons. First, they argue that Hallett only alleged that he complained to Stuart Dean about a material breach of his Employment Agreement, not a violation of New York Labor Law. They point out that, when complaining to the Board, Hallett did not identify the specific Labor Law provision that defendants allegedly violated.

Defendants' argument would strip the retaliation statute of meaning, requiring a complaining employee to invoke the New York Labor Law, chapter and verse, before the prohibition against retaliation attaches. That is not the state of New York law. Informal complaints suffice to confer protection against retaliation, and the employee need not specify the New York Labor Law provision that the employer allegedly violated. See NYLL § 215(1)(a) ("An employee complaint or other communication need not make explicit reference to any section or provision of this chapter to trigger the protections of this section."); see Duarte v. Tri-State Physical Med. & Rehab., P.C., 2012 U.S. Dist. LEXIS 96249, at *10 (S.D.N.Y. July 10, 2012) ("Unlike its federal

---

[9] Defendants argue that Hallett did not allege compliance with the statutory prerequisite to this cause of action -- namely, that he notify the State Attorney General. This is obviously untrue. Compl. ¶ 99 ("Notice of this claim has been served upon the Attorney General . . . .").

analogue, the NYLL's anti-retaliation provision unquestionably protects informal complaints made to an employer.").

However, defendants next argue that, because Hallett's incentive compensation does not constitute "wages" for purposes of NYLL § 193 (see supra Part III), a complaint about failure to provide LTIP payments, as a matter of law, is not a complaint about a violation of New York Labor Law. The Court agrees. Hallett only alleges that he complained about one violation of New York Labor Law: the failure to provide him with, or make payments under, an LTIP. But the Court has already concluded that Hallett has failed plausibly to allege that LTIP payments constitute wages under Section 193. Therefore, Hallett has not stated a claim for retaliation. The motion to dismiss is granted with respect to Count Four.

## V.   Defamation (Count Nine)

Hallett's final cause of action is defamation, based on the March 13, 2020 termination letter asserting he had engaged in "willful misconduct." Defendants persuasively argue that Hallett has not pled a cognizable cause of action for defamation because, among other things, the complaint does not allege that defendants published the termination letter to a third party, an element of the cause of action under New York law. Apparently recognizing the strength of this argument, Hallett "stipulates to the dismissal of the defamation claim (Count 9) without prejudice to reassertion

after discovery." Opp. 1. The motion to dismiss Count Nine is therefore granted.

For the foregoing reasons, Count Two (breach of contract) and Count Three (deduction of wages under NYLL § 193) are dismissed with respect to Hallett's claim for LTIP payments, but not otherwise; Count Four (retaliation) is dismissed; Count Nine (defamation) is dismissed; and defendants' motion to dismiss is otherwise denied. All dismissals are without prejudice.[10]

SO ORDERED.

Dated:     New York, NY
           August 25, 2020

JED S. RAKOFF, U.S.D.J.

---

[10] Defendants argue that, with respect to Count Nine, dismissal should be with prejudice. However, Hallett asserts in opposition that he believes the letter was published to third parties. Therefore, defendants have not demonstrated that amendment would be futile.