**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------X

BRUCE HALLETT,

                      Plaintiff,

       -against-

STUART DEAN CO., INC., ADRIENE
BAILEY, individually, THOMAS BROWN,
individually, MARGARET CULLEN,
individually, SCOTT DAY, individually,
CHRIS DEGAN, individually, CATHLEEN
DEGAN-NIKAS, individually, SCOTT
HALSTEAD, individually, TIMOTHY
SHEA, individually, and KRISTEN
SCHORP, individually,

                    Defendants.

Civ. No.: 1:20-cv-03881 (JSR)

-------------------------------------------------------------------X

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**SERVED ON DECEMBER 2, 2020**

JACKSON LEWIS P.C.
666 Third Avenue, 29th Floor
New York, New York 10017
(212) 545-4000

Michael A. Jakowsky
Lauren A. Parra

ATTORNEYS FOR DEFENDANTS

# TABLE OF CONTENTS

**Page(s)**

TABLE OF CONTENTS ........................................................................................................... i

PRELIMINARY STATEMENT ............................................................................................... 1

STATEMENT OF FACTS ....................................................................................................... 1

LEGAL STANDARD ............................................................................................................... 1

ARGUMENT ............................................................................................................................. 2

    POINT I ............................................................................................................................. 2

        DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT DISMISSING
        PLAINTIFF'S NEW YORK LABOR LAW CLAIMS ARISING FROM THE
        ALLEGED FAILURE TO PAY AN LTIP ...................................................................... 2

    A.     Plaintiff's Claims Under NYLL §§ 193 And 198 As To The LTIP Fail As A Matter of
          Law ............................................................................................................................. 2

    B.     Plaintiff's NYLL § 215 Claim Fails .......................................................................... 4

             1.     Plaintiff Did Not Complain About a Violation of the NYLL ......... 5

             2.     Plaintiff Cannot Demonstrate a Nexus Between His Purported
                  Complaint and His Exit From The Company ................................. 6

    POINT II ........................................................................................................................... 7

        DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S
        CLAIMS ARISING FROM THE ALLEGED FAILURE TO PAY A BONUS .......... 7

    A.     Plaintiff Cannot Establish a Breach of Contract Claim Arising From the Alleged
          Failure to Pay Bonus Compensation .......................................................................... 7

             1.     Plaintiff Can Not Establish A Claim For Breach of Contract for a
                  Discretionary Bonus ....................................................................... 8

             2.     Plaintiff Was Not Entitled to Payout of a Bonus Because He Failed
                  to Meet the Required Bonus Targets ............................................. 9

    B.     Plaintiff's Claims Under NYLL §§ 193 and 198 as to the Bonus Compensation Fail
          As A Matter of Law .................................................................................................. 10

1.      Plaintiff Cannot Maintain a NYLL § 193 Claim Absent a Contractual Right to Wages ......................................................... 10

2.      Discretionary Bonuses Do Not Constitute Wages Under NYLL § 193 ............................................................................................... 11

3.      Plaintiff Did Not Satisfy the Targets For Receiving a Bonus Payout ................................................................................................. 11

POINT III ............................................................................................................ 11

PLAINTIFF'S QUASI-CONTRACT AND TORT CLAIMS FAIL AS A MATTER OF LAW ......................................................................................... 11

A.   Promissory Estoppel ................................................................................. 13

1.      Plaintiff Cannot Identify a Clear and Unambiguous Promise Entitling Him to an LTIP .......................................................... 14

2.      Plaintiff's Alleged Reliance Was Not Reasonable or Foreseeable 17

3.      Plaintiff Cannot Demonstrate Any Injury Arising From His Unreasonable Reliance ................................................................ 19

B.   Breach of the Implied Covenant of Good Faith and Fair Dealing ............................ 20

1.      Plaintiff's Claim is Duplicative of His Breach of Contract Claims ................................................................................................. 20

2.      The Implied Covenant of Good Faith and Fair Dealing Fails As A Matter Of Law ............................................................................ 21

C.   Fraudulent Inducement ............................................................................. 22

1.      Plaintiff Cannot Demonstrate Any Misrepresentation by Defendants ................................................................................... 23

2.      Plaintiff Cannot Demonstrate Clear and Convincing Evidence that Defendants Intended to Defraud Plaintiff ...................................... 24

3.      Plaintiff Did Not Reasonably Rely On Any Misrepresentation.... 25

4.      Plaintiff Did Not Suffer Any Damage ......................................... 26

D.   Negligent Misrepresentation ..................................................................... 26

1.      Plaintiff Cannot Establish a Special Relationship ....................... 27

2.      Plaintiff Cannot Demonstrate Defendants Made a False
Representation ............................................................................... 28

3.      Plaintiff Did Not Reasonably Rely on the Michael Degan
Representation ............................................................................... 29

E.      Quantum Meruit – Unjust Enrichment ...................................................... 29

POINT IV ............................................................................................................. 31

PLAINTIFF CANNOT ESTABLISH A BREACH OF ANY FIDUCIARY DUTY  31

A.      Plaintiff Cannot Establish the Existence of a Fiduciary Duty .................... 31

B.      Plaintiff's Fiduciary Duty Claim is Duplicative of His Breach of Contract Claims .. 32

POINT V ............................................................................................................... 32

PLAINTIFF'S CLAIM OF DEFAMATION FAILS AS A MATTER OF LAW ...... 32

POINT VI ............................................................................................................. 35

PLAINTIFF'S TERMINATION DID NOT BREACH HIS EMPLOYMENT
AGREEMENT ............................................................................................. 35

POINT VII ........................................................................................................... 37

PLAINTIFF WAIVED, BY CONTRACT, ANY ENTITLEMENT TO ANY
COMPENSATION OTHER THAN WHAT IS PROVIDED FOR THROUGH THE
EXPRESS LANGUAGE OF HIS EMPLOYMENT AGREEMENT ........................ 37

POINT VIII ......................................................................................................... 39

THE INDIVIDUALLY NAMED DEFENDANTS SHOULD BE DISMISSED ...... 39

CONCLUSION ................................................................................................... 40

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Abrahami v. UPC Constr. Co.,
    638 N.Y.S.2d 11 (App. Div. 1996) ......................................................................23

Alter v. Bogoricin,
    1997 U.S. Dist. LEXIS 17369 (S.D.N.Y. Nov. 4, 1997) .......................................24

American Express Bank Ltd. v. Uniroyal, Inc.,
    164 A.D.2d 275 (1st Dept. 1990) ...........................................................................7

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986) ................................................................................................1

Angel v. Bank of Tokyo-Mitsubishi, Ltd.,
    39 A.D.3d 368 (1st Dep't 2007) ............................................................................32

Ashland Inc. v. Morgan Stanley & Co.,
    700 F. Supp. 2d 453 (S.D.N.Y. 2010) ...................................................................19

Aventine Inv. Mgmt., Inc. v. Canadian Imperial Bank of Commerce,
    697 N.Y.S.2d 128 (2d Dep't 1999) ........................................................................21

Bader v. Wells Fargo Home Mortg., Inc.,
    773 F. Supp. 2d 397 (S.D.N.Y. 2011) ...................................................................14

Baguer v. Spanish Broad. Sys., Inc.,
    2007 U.S. Dist. LEXIS 70793 (S.D.N.Y. Sept. 20, 2007) ....................................14

Bell v. Leakas,
    1993 U.S. Dist. LEXIS 3352 (S.D.N.Y. Mar. 13, 1993) .......................................15

Brayer v. John Hancock Mut. Life Ins. Co.,
    179 F.2d 925, 928 (2d Cir. 1950) ..........................................................................23

Brennan v. J.P. Morgan Secs., Inc.,
    2004 N.Y. Misc. LEXIS 3066 (N.Y. Sup. Ct. Aug. 31, 2004) ................................8

Buckman v. Calyon Securities (USA) Inc.,
    817 F. Supp. 2d 322 (S.D.N.Y. 2011) ...................................................................30

Bullmore v. Banc of Am. Secs. LLC,
    485 F. Supp. 2d 464 (S.D.N.Y. 2007) ...................................................................32

Cain v. Esthetique,
    182 F. Supp. 3d 54 (S.D.N.Y. 2016)......................................................................33

Cannon v. Douglas Elliman, LLC,
    2007 U.S. Dist. LEXIS 91139 (S.D.N.Y. Dec. 10, 2007) ......................................27

Canstar v. J.A. Jones Constr. Co.,
    212 A.D.2d 452 (N.Y. App. Div. 1st Dep't 1995)...................................................21

Celotex v. Catrett,
    477 U.S. 317 (1986).................................................................................................1

Coll v. PB Diagnostic Sys.,
    50 F.3d 1115 (1st Cir. 1995)...................................................................................11

Concesionaria DHM, S.A. v. Int'l Fin. Corp.,
    307 F. Supp. 2d 553 (S.D.N.Y. 2004)....................................................................21

Cornock v. Murnighan,
    727 N.Y.S.2d 803 (App. Div. 2001) .......................................................................25

Cruz v. NYNEX Info. Resources,
    263 A.D.2d 285 (N.Y. App. Div. 1st Dep't 2000)..................................................39

Cyberchron Corp. v. Calldata Systems Development, Inc.,
    831 F. Supp. 94 (E.D.N.Y. 1993) ...........................................................................15

D'Accord Fin. Servs., Inc. v. Metsa-Serla Oy,
    1999 U.S. Dist. LEXIS 1202 (S.D.N.Y. Feb, 8, 1999).....................................17, 29

Dalton v. Union Bank of Switzerland,
    134 A.D.2d 174 (1st Dep't 1987) ...........................................................................14

Davis v. Ross,
    754 F.2d 80 (2d Cir. 1985)......................................................................................33

Deutsch v. Kroll Assocs.,
    2003 U.S. Dist. LEXIS 16613 ................................................................................14

Deutsche Asset Mgmt. v. Callaghan,
    2004 U.S. Dist. LEXIS 5945 (S.D.N.Y. Apr. 7, 2004)..........................................33

Dhir v. Carlyle Grp. Emple. Co.,
    2017 U.S. Dist. LEXIS 162386 (S.D.N.Y. Sep. 29, 2017)....................................30

Diversified Mortgage Investors v. U.S. Life Title Ins. Co. of New York,
    544 F.2d 571, 575 (2d Cir. 1976)...........................................................................38

Dolmetta v. Uintah Nat'l Corp.,
    712 F.2d 15, 20 (2d Cir. 1983) ...........................................................................29

Dreni v. PrinterOn Am. Corp.,
    2020 U.S. Dist. LEXIS 167632 (S.D.N.Y. Sep. 14, 2020) ..................................3, 10

Dunn v. Sederakis,
    143 F. Supp. 3d 102, 112 (S.D.N.Y. 2015)...........................................................5

Eagle v. Emigrant Capital Corp.,
    2016 N.Y. Misc. LEXIS 335 (N.Y. Sup. Ct. Feb. 3, 2016) ...................................30

eBusinessware, Inc. v. Tech. Servs. Grp. Wealth Mgmt. Sols., LLC,
    2009 U.S. Dist. LEXIS 122193 (S.D.N.Y. Dec. 29, 2009) ....................................31

Emergent Capital Investment Mgmt., LLC v. Stonepath Group, Inc.,
    343 F.3d 189 (2d Cir. 2003).................................................................................17

Epifani v. Johnson,
    65 A.D.3d 224 (2 Dept. 2009) .............................................................................5

Esmilla v. Cosmopolitan Club,
    936 F. Supp. 2d 229 (S.D.N.Y. 2013)................................................................4, 5

Fire & Cas. Ins. Co. of Conn. v. 2207 7th Ave. Rest. Corp.,
    2004 U.S. Dist. LEXIS 1741 (S.D.N.Y. Aug. 30, 2004) ........................................23

Foxley v. Sotheby's Inc.,
    893 F. Supp. 1224 (S.D.N.Y. 1995).....................................................................15

Gaughan v. Rubenstein,
    261 F. Supp. 3d 390 (S.D.N.Y. 2017)....................................................................6

Gottlieb v. Cnty. of Orange,
    84 F.3d 511 (2d Cir. 1996)....................................................................................2

Gottlieb v. Kenneth D. Laub & Co.,
    82 N.Y.2d 457, 462 (1993) ...................................................................................3

Grappo v. Alitalia Linee Aeree Italiane, S.p.A.,
    56 F.3d 427, 434 (2d Cir. 1995)..........................................................................13

Greathouse v. JHS Sec. Inc.,
    784 F.3d 105 (2d Cir. 2015).................................................................................5

In re Gulf Oil/Cities Serv. Tender Offer Litig.,
    725 F. Supp. 712 (S.D.N.Y. 1989) ................................................................18, 29

Hartford Fire Ins. Co. v. Federated Dep't Stores, Inc.,
   723 F. Supp. 976 (S.D.N.Y. 1989) ......................................................15

Henneberry v. Sumitomo Corp. of Am.,
   415 F. Supp. 2d 423 (S.D.N.Y. 2006)...................................................28

Higueros v. New York State Catholic Health Plan, Inc.,
   526 F. Supp. 2d 342, 347 (E.D.N.Y. 2007) ............................................4

Hudson Venture Partners, L.P. v. Patriot Aviation Group, Inc.,
   1999 U.S. Dist. LEXIS 1518 (S.D.N.Y. Feb. 17, 1999)........................39

Hydro Investors, Inc. v. Trafalgar Power Inc.,
   227 F.3d 8 (2d Cir. 2000)....................................................................27

IDT Corp. v. Morgan Stanley Dean Witter & Co.,
   12 N.Y.3d 132 (2009) .........................................................................31

Integra FX3X Fund, L.P. v. Deutsche Bank, AG,
   2016 U.S. Dist. LEXIS 37092 (S.D.N.Y. Mar. 22, 2016) ..........16, 17, 29

Intertex Trading Corp. v. Ixtaccihuatl S.A. de CV,
   754 F. Supp. 2d 610 (S.D.N.Y. Dec. 1, 2010) .......................................13

James v. Gannett Co.,
   40 N.Y.2d 415 (Ct. App. 1976) ...........................................................33

Kaplan v. Capital Co. of Am. Llc,
   298 A.D.2d 110 (App. Div. 1st Dept. 2002)...........................................11

Karmilowicz v. Hartford Fin. Servs. Grp., Inc.,
   2011 U.S. Dist. LEXIS 77481 (S.D.N.Y. July 14, 2011), aff'd, 494 Fed.
   App'x 153 (2d Cir. 2012) ..........................................................3, 10, 30

Kasten v. Saint-Gobain Performance Plastics Corp.,
   563 U.S. 1, 14 (2011)............................................................................5

Kaye v. Grossman,
   202 F.3d 611 (2d Cir. 2000)......................................................13, 23, 29

Khurana v. Wahed Invest, LLC,
   2019 U.S. Dist. LEXIS 31554 (S.D.N.Y. Feb. 26, 2019).........................3

Kolchins v. Evolution Mkts., Inc.,
   31 N.Y.3d 100 (2018) .........................................................................11

Komatsu Invs., Ltd. v. Greater China Corp.,
   1997 U.S. Dist. LEXIS 310 (S.D.N.Y. Jan. 17, 1997)..........................39

Komlossy v. Faruqi & Faruqi, LLP,
   2017 U.S. Dist. LEXIS 25490 (S.D.N.Y. Feb. 23, 2017) ..................................................... 13

Kwon v. Yun,
   606 F. Supp. 2d 344 (S.D.N.Y. 2009) ............................................................................. 27, 28

Law Debenture Trust Co. of New York v. Maverick Tube Corp.,
   595 F.3d 458 (2d Cir. 2010) ................................................................................................ 7, 8

Lazard Freres & Co. v. Protective Life Ins. Co.,
   108 F.3d 1531 (2d Cir. 1997) ................................................................................................. 18

Leberman v. John-Blair & Co.,
   880 F.2d 1555, 1560 (2d Cir. 1989) ....................................................................................... 22

Levion v. Societe Generale,
   822 F. Supp. 2d 390 (S.D.N.Y. 2011), aff'd, 503 F. App'x 62 (2d Cir. 2012) ................ 20, 30

Lian v. Sedgwick James, Inc.,
   992 F. Supp. 644 (S.D.N.Y. 1998) ................................................................................... 34, 35

Lind v. Vanguard Offset Printers, Inc.,
   857 F. Supp. 1060 (S.D.N.Y. 1994) ....................................................................................... 27

Malinowski v. Wall St. Source, Inc.,
   2012 U.S. Dist. LEXIS 11575 (S.D.N.Y. Jan. 31, 2012) ......................................................... 3

Marcraft Recreation Corp. v. Francis Devlin Co.,
   506 F. Supp. 1081 (S.D.N.Y. 1981) ....................................................................................... 25

Margrove Inc. v. Lincoln First Bank of Rochester,
   388 N.Y.S.2d 958, 960 (App. Div. 1976) ............................................................................... 28

Marks v. New York Univ.,
   61 F. Supp. 2d 81 (S.D.N.Y. 1999) ................................................................................ 7, 9, 36

Matsushita Elec. Indus. Co. v. Zenith,
   475 U.S. 574 (1986) ................................................................................................................. 1

M/A-Com Sec. Corp. v. Galesi,
   904 F.2d 134, 136 (2d Cir. 1990) ........................................................................................... 22

Mencher v. Chesley,
   297 N.Y. 94, 99 (1947) ........................................................................................................... 33

Mendez v. Bank of Am. Home Loans Servicing, LP,
   840 F. Supp. 2d 639 (E.D.N.Y. 2012) .................................................................................... 20

Merex A.G. v. Fairchild Weston Systems, Inc.,
    29 F.3d 821 (2d Cir. 1994) ................................................................................13

Metro. Life Ins. Co. v. RJR Nabisco, Inc.,
    906 F.2d 884 (2d Cir. 1990) .....................................................................7, 38, 39

Metzler v. Harris Corp.,
    2001 U.S. Dist. LEXIS 1903 (S.D.N.Y. Feb. 26, 2001) ...................................27

Mfrs. & Traders Trust Co. v. Sapowitch,
    72 N.E.2d 166, 168 (N.Y. 1947) ......................................................................25

Morgenweck v. Vision Capital Advisors, LLC,
    410 F. App'x 400 (2d Cir. 2011) ......................................................................13

Murray v. Xerox Corp.,
    811 F.2d 118, 123 (2d Cir. 1987) .....................................................................28

Namad v. Salomon Inc.,
    74 N.Y.2d 751 (1989) .........................................................................................8

National Union Fire Ins. Co. of Pittsburgh, Pa. v. Worley,
    690 N.Y.S.2d 57 (1999) ....................................................................................23

NCC Sunday Inserts, Inc. v. World Color Press, Inc.,
    759 F. Supp. 1004 (S.D.N.Y. 1991) ......................................................14, 17, 29

Nikitovich v. O'Neal,
    40 A.D.3d 300 (1st Dep't 2007) .......................................................................20

Non-Linear Trading Co. v. Braddis Assocs.,
    243 A.D.2d 107, 675 N.Y.S.2d 5 (App. Div. 1998) .........................................25

November v. Time Inc.,
    244 N.Y.S.2d 309 (Ct. App. 1963) ...................................................................33

Onanuga v. Pfizer, Inc.,
    2003 U.S. Dist. LEXIS 20298 (S.D.N.Y. Nov. 7, 2003) ..................................27

Phx. Racing, Ltd. v. Lebanon Valley Auto Racing Corp.,
    53 F. Supp. 2d 199 (N.D.N.Y. 1999) ...............................................................22

Pierre v. Air Serv. Sec.,
    2016 U.S. Dist. LEXIS 100660 (E.D.N.Y. July 28, 2016) .................................6

Pokoik v. Pokoik,
    115 A.D.3d 428, 429 (1st Dep't 2014) ..............................................................31

PPI Enters., Inc. v. Del Monte Foods Co.,
    2003 U.S. Dist. LEXIS 16006 (S.D.N.Y. Sept. 11, 2003)......................................23

R.G. Grp., Inc. v. Horn & Hardart Co.,
    751 F.2d 69 (2d Cir. 1984)................................................................................18

Rather v. CBS,
    68 A.D.3d 49 (1st Dep't 2009) ................................................................20, 21, 32

RCN Telecom Services, Inc. v. 202 Centre Street Realty LLC,
    156 Fed. Appx. 349 (2d Cir. 2005)..................................................................7, 36

Readco, Inc. v. Marine Midland Bank,
    81 F.3d 295, 301 (2d Cir. 1996)..........................................................................13

Rojo v. Deutsche Bank,
    2010 U.S. Dist. LEXIS 62796 (S.D.N.Y. June 23, 2010)......................................14

Schwartz v. Newsweek, Inc.,
    653 F. Supp. 384 (S.D.N.Y. 1986) ......................................................................25

Sea Trade Mar. Corp. v. Coutsodontis,
    744 F. App'x 721 (2d Cir. 2018) .........................................................................31

Sheahan v. CBS Inc.,
    1994 U.S. Dist. LEXIS 2623 (S.D.N.Y. Mar. 3, 1994) ........................................19

Smith v. Railworks Corp.,
    2011 U.S. Dist. LEXIS 55031 (S.D.N.Y. May 17, 2011).......................................8

Stewart v. Jackson & Nash,
    976 F.2d 86 (2d Cir. 1992)..................................................................................27

Tanzman v. La Pietra,
    778 N.Y.S.2d 199 (App. Div. 2004) ....................................................................25

Telecom Int'l Am., Ltd. v. AT&T Corp.,
    280 F.3d 175 (2d Cir. 2001)................................................................................23

Tierney v. Capricorn Inv'rs, L.P.,
    189 A.D.2d 629, 632 (1st Dep't 1993) ..................................................................3

Truelove v. Ne. Capital & Advisory, Inc.,
    95 N.Y.2d 220 (2000) .........................................................................................11

U S West Fin. Servs. v. Tollman,
    786 F. Supp. 333 (S.D.N.Y. 1992) ......................................................................28

<u>Watkins v. First Student, Inc.</u>,
  2018 U.S. Dist. LEXIS 32729 (S.D.N.Y. Feb. 28, 2018) .................................................... 5, 6

<u>Wegman v. Dairylea Cooperative, Inc.</u>,
  50 A.D.2d 108 (4th Dep't 1975) ............................................................................................. 23

<u>Weldy v. Piedmont Airlines, Inc.</u>,
  985 F.2d 57, 61 (2d Cir. 1993) ................................................................................................ 33

<u>William Kaufman Org., Ltd. v. Graham & James LLP</u>,
  269 A.D.2d 171 (1st Dep't 2000) ...................................................................................... 31, 32

**Statutes**

New York Labor Law ................................................................................................... *passim*

N.Y. Labor Law § 193 .................................................................................................. *passim*

N.Y. Labor Law §198 ..................................................................................................... 3, 10

N.Y. Labor Law § 215 ...................................................................................................... 4, 5

**Other Authorities**

Fed. R. Civ. P. 56(c) ............................................................................................................. 1

Local Civil Rule 56.1 ............................................................................................................ 1

## PRELIMINARY STATEMENT

Defendant Stuart Dean Co., Inc. ("Stuart Dean" or the "Company"), and individually named Defendants, Adriene Bailey, Thomas Brown, Margaret Cullen, Scott Day, Chris Degan, Cathleen Degan-Nikas, Scott Halstead, Timothy Shea, and Kristen Schorp (together with Stuart Dean, the "Defendants"), submit this Memorandum of Law in support of their motion for summary judgment, under FRCP 56, seeking dismissal of the Amended Complaint ("Complaint") brought by Plaintiff Bruce Hallett ("Plaintiff" or "Mr. Hallett").

## STATEMENT OF FACTS

Pursuant to Local Civil Rule 56.1, the uncontested material facts relevant to this motion are set forth in Defendants' Statement of Uncontested Facts ("DSOF").

## LEGAL STANDARD

A party is entitled to summary judgment where, as here, there are no genuine issues of material fact, and the undisputed facts demonstrate the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, summary judgment is appropriate, "against a party who fails to make a showing sufficient to establish the existence of an essential element to the party's case, and on which the party will bear the burden of proof at trial." Celotex v. Catrett, 477 U.S. 317, 322 (1986).

To attempt to defeat a motion for summary judgment, the party opposing the motion must "do more than simply show that there is some metaphysical doubt as to the material facts," it must offer concrete evidence in admissible form upon which "a reasonable juror could return a verdict" in favor of the non-moving party. Matsushita Elec. Indus. Co. v. Zenith, 475 U.S. 574, 586 (1986). A plaintiff cannot defeat a summary judgment motion "that is properly supported by affidavits, depositions, and documents . . . by relying on the allegations in his pleading[s] . . . or

1

on conclusory statements, or on mere assertions that the affidavits supporting the motion are not credible." Gottlieb v. Cnty. of Orange, 84 F.3d 511, 518 (2d Cir. 1996).

For the reasons set forth below, there are no genuine issues of material fact with respect to Plaintiff's claims. The undisputed facts establish that Defendants are entitled to judgment as a matter of law. Accordingly, Defendants' motion for summary judgment should be granted and Plaintiff's Amended Complaint should be dismissed in its entirety, with prejudice.

## ARGUMENT

## POINT I

### DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT DISMISSING PLAINTIFF'S NEW YORK LABOR LAW CLAIMS ARISING FROM THE ALLEGED FAILURE TO PAY AN LTIP

Despite this Court's clear ruling in its August 25, 2020 Order, Plaintiff reasserted his wage claims under the New York Labor Law ("NYLL") for compensation under a non-existent Long-Term Incentive Compensation Plan ("LTIP") in his Complaint without making any material alterations to the legal flaws that subjected the claim to dismissal under the Court's Order ("MTD Order"). DSOF at ¶¶ 324, 328, 330. Plaintiff's claims remain, thus, subject to dismissal based on the sound rationale in the Court's MTD Order.

Plaintiff premises Count Three of his Complaint on Defendants' alleged failure to pay two (2) forms of incentive compensation – an annual bonus and an LTIP. DSOF at ¶ 331. Consistent with the Court's MTD Order, Defendants address the bonus and the LTIP separately. Here, Defendants address Plaintiff's claims as they relate to the alleged failure to pay an LTIP.

### A.    Plaintiff's Claims Under NYLL §§ 193 And 198 As To The LTIP Fail As A Matter of Law

Any compensation due under a purported LTIP is not wages as defined by New York Law. NYLL § 193 prohibits an employer from making deductions, unless authorized by

statute, from an employee's wages. A plaintiff cannot assert a wage claim under NYLL § 193 absent an entitlement to that compensation, generally through contract. See Karmilowicz v. Hartford Fin. Servs. Grp., Inc., 494 Fed. App'x 153, 158 (2d Cir. 2012) (a plaintiff "cannot assert a statutory claim for wages under the Labor Law if he has no enforceable contractual right to those wages") (quoting Tierney v. Capricorn Inv'rs, L.P., 189 A.D.2d 629, 632 (1st Dep't 1993)). Where a plaintiff has no contractual right to the compensation, dismissal of that claim is appropriate. See Khurana v. Wahed Invest, LLC, 2019 U.S. Dist. LEXIS 31554, at *36 (S.D.N.Y. Feb. 26, 2019).

In addition, NYLL§ 198 is a remedies provision, and these remedies "are available only when a claimant has established a violation of his rights under a substantive portion of [NYLL] Article 6." Malinowski v. Wall St. Source, Inc., 2012 U.S. Dist. LEXIS 11575, at *2 (S.D.N.Y. Jan. 31, 2012) (citing Gottlieb v. Kenneth D. Laub & Co., 82 N.Y.2d 457, 462 (1993)). It thus follows that where a plaintiff's NYLL §193 claim fails, so must their NYLL §198 claim. See Dreni v. PrinterOn Am. Corp., 2020 U.S. Dist. LEXIS 167632, at *30 (S.D.N.Y. Sep. 14, 2020) ("Because [Plaintiff]'s claim under § 193 fails, his claim under § 198 also fails).

Here, Plaintiff cannot establish a NYLL § 193 claim arising from the alleged failure to pay compensation under an LTIP because he neither has pled nor has an actual contractual entitlement to any compensation under an LTIP. In his original Complaint, Plaintiff pled a breach of contract claim as well as a wage claim for an LTIP. DSOF at ¶ 323. Both claims were appropriately and summarily dismissed by the Court. DSOF at ¶¶ 324-328. Plaintiff then filed an Amended Complaint, which resurrected his LTIP wage claim, but did not reassert a breach of contract claim arising from the alleged LTIP. DSOF at ¶¶ 330-331. Plaintiff presumably did not reallege a breach of contract claim for the LTIP because this Court's MTD Order dismissing that claim was emphatically clear that such a claim was entirely unsupported. DSOF at ¶¶ 324-325.

3

Specifically, this Court held that Plaintiff "has not plausibly alleged that the parties intended that the Employment Agreement would bind Stuart Dean to make LTIP payments to [Plaintiff]." DSOF at ¶ 325. The Court, in turn, then dismissed Plaintiff's wage-claim related to the LTIP since Plaintiff had no contractual right to compensation owed under an LTIP. DSOF at ¶ 328. For the same reasons articulated in the Court's Order, Plaintiff's wage-claim under an LTIP still fails as a matter of law because he has no contractual entitlement to any payments due under an LTIP. Accordingly, Count Three of Plaintiff's Amended Complaint with respect to the LTIP must be dismissed with prejudice.

**B.**      **Plaintiff's NYLL § 215 Claim Fails**

Like his wage-claim for compensation due under an LTIP, Plaintiff's Amended Complaint simply reasserts the same factual allegations, without modification, from his original Complaint to support his retaliation claim. DSOF at ¶ 335. For the same reasons articulated in the Court's August 2020 order, Plaintiff's retaliation claim remains doomed. DSOF at ¶ 329.

NYLL § 215 prohibits discharging an employee in retaliation for complaining that the employer "has violated any provision of this chapter, or because such employee has caused to be instituted a proceeding under or related to this chapter." N.Y. Labor Law § 215 (1). To establish a *prima facie* case of retaliation under NYLL § 215, Plaintiff must demonstrate that, "while employed by [Defendants], he [] made a complaint about the employer's violation of New York Labor Law and was terminated or otherwise penalized, discriminated against, or subjected to an adverse employment action as a result." Esmilla v. Cosmopolitan Club, 936 F. Supp. 2d 229, 238-39 (S.D.N.Y. 2013) (quoting Higueros v. New York State Catholic Health Plan, Inc., 526 F. Supp. 2d 342, 347 (E.D.N.Y. 2007)). Further, there must be "a nexus between the employee's complaint and the employer's retaliatory action." Id. Once Plaintiff establishes a *prima facie* case of

4

retaliation under Section 215, the burden shifts to Defendants to produce evidence suggesting that it had a legitimate, non-retaliatory explanation for its actions. <u>Esmilla</u>, 936 F. Supp. 2d at 239.

### 1.    Plaintiff Did Not Complain About a Violation of the NYLL

The critical element of a NYLL § 215 claim is that the complaint must concern a violation of the NYLL. <u>Epifani v. Johnson</u>, 65 A.D.3d 224, 236 (2d Dept. 2009) (citation omitted). This Court's MTD Order dismissing Plaintiff's retaliation claim correctly noted that Plaintiff "only alleges that he complained about one violation of New York Labor Law: the failure to provide him with, or make payments under, an LTIP." DSOF at ¶ 329. Neither the facts nor the pleadings have changed. DSOF at ¶ 335. As outlined above and correctly decided in this Court's MTD Order, Plaintiff "has failed to plausibly allege that LTIP payments constitute wages under Section 193". DSOF at ¶ 329. It thus follows that Plaintiff's Complaint cannot possibly concern a violation of the NYLL.

Moreover, simply inquiring about the status of an LTIP does not, as a matter of law, qualify as making a complaint under the NYLL. For purposes of a NYLL § 215 claim, the complaint must be "'sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection.'" <u>Greathouse v. JHS Sec. Inc.</u>, 784 F.3d 105, 107 (2d Cir. 2015) (quoting <u>Kasten v. Saint-Gobain Performance Plastics Corp.</u>, 563 U.S. 1, 14 (2011)). Courts interpreting this standard have held the protected complaint must allege the employer is engaged in a violation. <u>See</u> <u>Watkins v. First Student, Inc.</u>, 2018 U.S. Dist. LEXIS 32729, at *26 (S.D.N.Y. Feb. 28, 2018) (citing <u>Dunn v. Sederakis</u>, 143 F. Supp. 3d 102, 112 (S.D.N.Y. 2015)). Here, Plaintiff contends he "complained" via an email sent on March 2, 2020 in which he asked, ███████████████████████ ████████████████████████████████████████████████████████████ DSOF at ¶ 189. Clearly, this simple question is insufficient to put Defendants on notice that Plaintiff

believed they were engaging in a violation of the NYLL. See Watkins, 2018 U.S. Dist. LEXIS 32729 at *26.

Accordingly, Plaintiff cannot, as a matter of law, maintain a claim for retaliation.

**2.    Plaintiff Cannot Demonstrate a Nexus Between His Purported Complaint and His Exit From The Company**

Even assuming *arguendo* Plaintiff's complaint concerned a violation of NYLL, he cannot demonstrate a nexus between the alleged complaint and his termination. There are no facts, beyond the conclusory allegations in Plaintiff's Complaint, which support any inference that Plaintiff's departure was the direct result of his purported complaint. Mere conclusory allegations cannot support a claim for retaliation. See, e.g., Gaughan v. Rubenstein, 261 F. Supp. 3d 390, 421 (S.D.N.Y. 2017) (finding summary assertions insufficient to substantiate a causal connection for purposes of a NYLL retaliation claim). Moreover, Courts will not find a causal nexus where there is evidence that a discussion regarding a decision to terminate precedes the plaintiff's complaint. Pierre v. Air Serv. Sec., 2016 U.S. Dist. LEXIS 100660, at *43 (E.D.N.Y. July 28, 2016) (finding discipline which led to plaintiff's termination, but preceded plaintiff's protected activity, destroyed the causal nexus).

Discussions regarding Plaintiff's possible departure first began when the Company's Director of Human Resources, Karishma Israni, resigned. DSOF at ¶ 289. On February 6, 2020, Ms. Israni contacted Board Member Thomas Brown to report instances of improper conduct by Plaintiff. DSOF at ¶ 291. In response to these complaints, the Board arranged for an Exit Interview with Ms. Israni. DSOF at ¶¶ 291-292. During that interview, Ms. Israni shared a number of concerns about Plaintiff, including his failure to comply with New York law in instituting anti-sexual harassment training, his harassing and bullying behavior, and his overall negative treatment of older workers as well as women in the workplace. DSOF at ¶ 293. On

February 20, 2020, the details of Ms. Israni's exit interview were shared with the Board of Directors. DSOF at ¶ 294. Immediately thereafter, the Board began discussing Plaintiff's future with the Company. DSOF at ¶¶ 295-303. These discussions, and other items articulated in Point VI below, culminated in Plaintiff's exit on March 8, 2020. DSOF at ¶¶ 302-318. Accordingly, Plaintiff cannot establish a causal nexus between his alleged complaint and his termination. As such, his retaliation claim fails as a matter of law.

**POINT II**

**DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS ARISING FROM THE ALLEGED FAILURE TO PAY A BONUS**

   A.   **Plaintiff Cannot Establish a Breach of Contract Claim Arising From the Alleged Failure to Pay Bonus Compensation**

Plaintiff's bonus claim fails because has not established a contractual entitlement to any specific and guaranteed bonus payment. To establish a breach of contract claim under New York law, a plaintiff must demonstrate: "(1) the existence of a contract, (2) performance by the party seeking recovery, (3) non-performance by the other party, and (4) damages attributable to the breach." RCN Telecom Services, Inc. v. 202 Centre Street Realty LLC, 156 Fed. Appx. 349 (2d Cir. 2005) (citing Marks v. New York Univ., 61 F. Supp. 2d 81, 88 (S.D.N.Y. 1999)). In analyzing these claims, "the court's general objective should be to give effect to the intentions of the parties in entering into the agreement[]." Metro. Life Ins. Co. v. RJR Nabisco, Inc., 906 F.2d 884, 889 (2d Cir. 1990). Where a contract is "unambiguous on its face, its proper construction is a question of law." Id. at 889 (discussing New York law). In the absence of contractual ambiguity, words and terms are given their plain and ordinary meaning. See, e.g., Law Debenture Trust Co. of New York v. Maverick Tube Corp., 595 F.3d 458, 467 (2d Cir. 2010); American Express Bank Ltd. v. Uniroyal, Inc., 164 A.D.2d 275, 277 (1st Dept. 1990). A contract is unambiguous where the "language has a definite and precise meaning, unattended by danger of misconception in the

7

purport of the contract itself and concerning which there is no reasonable basis for a difference of opinion." Law Debenture, 595 F.3d at 467 (internal quotation marks omitted).

      **1.**      **Plaintiff Can Not Establish A Claim For Breach of Contract for a Discretionary Bonus.**

Plaintiff's breach of contract claim fails as a matter of law because it is premised upon Defendants' alleged failure to pay a discretionary bonus. It has long been established in New York that an employee has no enforceable right to compensation under a discretionary bonus plan. See Smith v. Railworks Corp., 2011 U.S. Dist. LEXIS 55031, at *3 (S.D.N.Y. May 17, 2011) (citing, inter alia, Namad v. Salomon Inc., 74 N.Y.2d 751, 752-53 (1989); Bessemer Trust Co., N.A. v. Branin, 618 F.3d 76, 92 (2d Cir. 2010)); Brennan v. J.P. Morgan Secs., Inc., 2004 N.Y. Misc. LEXIS 3066, at *8 (N.Y. Sup. Ct. Aug. 31, 2004). In Namad, for example, the parties signed an employment contract which specified "[t]he amounts of other compensation and entitlements, *if any*, including regular bonuses, special bonuses and stock awards, shall be at the discretion of the management." Namad, 74 N.Y.2d at 752-53 (emphasis added). The New York Court of Appeals unanimously affirmed the dismissal of the employee's breach of contract claim for failure to pay a bonus because "the bonus clause [had] unambiguously vest[ed] discretion regarding the amount of bonus compensation to be awarded in defendants' management." Id. at 753.

It is undisputed that Plaintiff's Employment Agreement contains the same magic words contained in the Namad agreement: ███████████████████████████. DSOF at ¶ 63 (emphasis added). Giving this phrase it's plain and ordinary meaning (which Plaintiff admittedly understood (DSOF at ¶ 64)), it is clear the parties intended for Plaintiff's Annual Bonus to be discretionary. Moreover, Plaintiff readily admits the Board had sound discretion to award such bonuses, particularly to senior executives, and that no such bonuses would be due if an executive's employment ended prior to payment of that bonus. DSOF at ¶¶ 65, 67-69. In fact,

8

Plaintiff admitted that ████████████████████████████████████
████████████████████████████████████████ DSOF at ¶ 66. In addition,
Plaintiff regularly exercised whether to grant such bonuses to his direct reports and denied a bonus
to an executive because the executive departed prior to the payment and distribution of such bonus.
DSOF at ¶¶ 67-69.

Based on these undisputed facts, the Annual Bonus identified in Plaintiff's
Employment Agreement was clearly within the sound discretion of the Board to award. Plaintiff,
therefore, has no enforceable right to that bonus. As such, Defendants are entitled to summary
judgment on Plaintiff's breach of contract claim arising from the alleged failure to pay such bonus.

### 2.   Plaintiff Was Not Entitled to Payout of a Bonus Because He Failed to Meet the Required Bonus Targets

Even assuming *arguendo* the Annual Bonus was non-discretionary, Plaintiff's
claim nevertheless fails because he admits he did not meet the eligibility requirements clearly
articulated under the contract. See Marks, 61 F. Supp. 2d at 90 ("[P]laintiff's claim of breach of
contract fails due to the defective nature of her own performance").

Pursuant to Plaintiff's Employment Agreement, and as he readily admitted,
Plaintiff was required to meet specific targets before he could even be considered eligible for any
potential bonus. DSOF at ¶¶ 70-72. Specifically, to be considered eligible for any potential bonus,
Plaintiff had to achieve annual targets of profitability, operating revenue growth, and Board
directed strategic goals. DSOF at ¶¶ 70, 72. Plaintiff understood the parameters of the bonus
eligibility requirements. DSOF at ¶ 106. Plaintiff also understood ████████████████████
████████████████████████████ Nevertheless, by his own admission,
Plaintiff failed to achieve these targets. DSOF at ¶ 107. Specifically, on February 29, 2020,
Plaintiff sent an email to the Compensation Committee attaching his self-assessment on the 2019

goals. DSOF at ¶ 115. Pursuant to this self-assessment, Plaintiff did not achieve his net income target for 2019. DSOF at ¶ 116-118. In addition, Plaintiff did not reach the revenue threshold for 2019. DSOF at ¶¶ 119-120. Critically, the bonuses, if any, needed ███████████████████ ██████████████████████████████████████████████ DSOF at ¶ 121. However, Plaintiff's employment with the Company ended on March 8, 2020. DSOF at ¶ 122.

The undisputed facts clearly demonstrate that payment of the Annual Bonus was contingent upon Plaintiff achieving certain financial targets. DSOF at ¶¶ 70, 71, 110, 114. Plaintiff failed to meet those targets. DSOF at ¶ 78. Plaintiff was therefore not entitled to payment of a bonus for 2019. DSOF at ¶ 71. Accordingly, Count Two of the Amended Complaint should be dismissed with prejudice.

### B.   Plaintiff's Claims Under NYLL §§ 193 and 198 as to the Bonus Compensation Fail As A Matter of Law

#### 1.   Plaintiff Cannot Maintain a NYLL § 193 Claim Absent a Contractual Right to Wages

As addressed supra, a plaintiff cannot assert a wage claim under NYLL § 193 absent a contractual right to those wages. See Karmilowicz, 494 F. App'x at 158. Thus, Plaintiff's NYLL claims arising from the alleged failure to pay a bonus fail for the same reason as the LTIP claim – Plaintiff has no contractual right to a bonus.[1]

---

[1]   Assuming *arguendo* Plaintiff could maintain his breach of contract claim, Plaintiff cannot establish a claim under NYLL § 193 because failure to pay a bonus does not constitute a "deduction of wages" within the meaning of the law. "The law in this district is clear that a failure to pay, or a withholding of, wages does not constitute a 'deduction' within the meaning of § 193." Dreni, 2020 U.S. Dist. LEXIS 167632, at *28 (granting defendant's motion for summary judgment and dismissing plaintiff's NYLL §§ 193 and 198 claims based on failure to pay commissions).

### 2.   Discretionary Bonuses Do Not Constitute Wages Under NYLL § 193

New York courts consistently hold that discretionary bonuses do not invoke the protections of the NYLL. See Truelove v. Ne. Capital & Advisory, Inc., 95 N.Y.2d 220, 225 (2000). The Court of Appeals echoed its Truelove decision in Kolchins v. Evolution Mkts., Inc., stating "we concluded that the bonus payments constituted '[d]iscretionary additional remuneration' that was 'outside the protection of the [NYLL]'". Kolchins v. Evolution Mkts., Inc., 31 N.Y.3d 100, 109 (2018) (quoting Truelove, 95 N.Y.2d at 224).

As outlined above, it is undisputed, and in fact Plaintiff readily admits, his bonus was discretionary and not subject to payment post-termination. DSOF at ¶¶ 62-69. Thus, Plaintiff has not established a NYLL § 193 claim arising from Defendants' alleged failure to pay the bonus.

### 3.   Plaintiff Did Not Satisfy the Targets For Receiving a Bonus Payout

Even if discretionary bonuses constituted wages and could give rise to a NYLL claim, it is undisputed that Plaintiff was not eligible to receive payout of any bonus because he failed to satisfy the annual established bonus targets. See Point I, A, 2 supra. Accordingly, Count Three of Plaintiff's Complaint should be dismissed with prejudice.

### POINT III

### PLAINTIFF'S QUASI-CONTRACT AND TORT CLAIMS FAIL AS A MATTER OF LAW

In an attempt to circumvent the failures of his LTIP-based breach of contract claim and New York's Statute of Frauds, Plaintiff asserts various quasi-contractual and tort-based claims. As a matter of law, Plaintiff's attempts must fail.[2] See Kaplan v. Capital Co. of Am. Llc,

---

[2]   See Coll v. PB Diagnostic Sys., 50 F.3d 1115, 1124 (1st Cir. 1995) (affirming grant of summary judgment motion dismissing plaintiff's breach of contract and promissory estoppel claim

298 A.D.2d 110, 111 (App. Div. 1st Dept. 2002) (affirming dismissal of plaintiff's quasi-contractual and tort-based claims where plaintiff was clearly apprised of, and acknowledged, in writing that no promises regarding the terms of his employment could be made, except by specific individuals and in writing.)

Plaintiff effectively suffers from buyers' remorse. By his own admission, Plaintiff regrets the contents of his Employment Agreement and wishes he had asked for additional language to his benefit. DSOF at ¶¶ 75-77. However, Plaintiff also acknowledges the failure to incorporate additional language was a failure on his part. DSOF at ¶ 77. Critically, Plaintiff, as a sophisticated career executive with a background of helping to draft such documents, understood the Agreement's contents and their meanings. DSOF at ¶¶ 1-16, 18-24, 58, 81-83, 91-92. With that understanding, Plaintiff signed the Agreement. DSOF at ¶ 56. Now, after the fact, Plaintiff wants to effectively renegotiate his Agreement by asserting these quasi-contractual and tort-based claims. To the extent Plaintiff desired an absolute entitlement to an LTIP, he should have ensured it was captured in his Employment Agreement. It is undisputed that Plaintiff failed to do so. DSOF at ¶¶ 87-89. This is even more significant here where Plaintiff was well aware of at least one other Company executive who had more specific promises made in his Employment Agreement concerning an LTIP. DSOF at ¶¶ 25-26, 29-34, 87.

In the absence of this language within his Employment Agreement, Plaintiff seeks to rely on an oral promise of entitlement to an LTIP. DSOF at ¶¶ 52-53. However, such reliance is

---

premised on allegation that during contract negotiations defendant promised to develop an LTIP for plaintiff but where plaintiff's subsequent Employment Agreement was an integrated and final expression of the parties' agreement with respect to compensation matters.)

misplaced given that any such promise is unenforceable under New York's Statute of Frauds.[3] See Komlossy v. Faruqi & Faruqi, LLP, 2017 U.S. Dist. LEXIS 25490, at *9 (S.D.N.Y. Feb. 23, 2017) (applying the Statute of Frauds to an oral agreement to pay a finder fee commission where defendant's obligation to pay such commission was incapable of full performance within one year, and thus finding the oral agreement unenforceable). Plaintiff's attempts at circumvention are further flawed and must fail as a matter of law because "it is well settled that under New York law a plaintiff may not escape the Statute of Frauds by attaching the label 'quantum meruit' or 'unjust enrichment' or 'promissory estoppel' to the underlying contract claim." Morgenweck v. Vision Capital Advisors, LLC, 410 F. App'x 400, 402 n.1 (2d Cir. 2011) (citing Grappo v. Alitalia Linee Aeree Italiane, S.p.A., 56 F.3d 427, 434 (2d Cir. 1995)); accord Merex A.G. v. Fairchild Weston Systems, Inc., 29 F.3d 821, 824-25 (2d Cir. 1994); Intertex Trading Corp. v. Ixtaccihuatl S.A. de CV, 754 F. Supp. 2d 610 (S.D.N.Y. Dec. 1, 2010)). Thus, all of Plaintiff's collateral claims addressed in this section are subject to dismissal based on the Statute of Frauds.

### A.    **Promissory Estoppel**

A cause of action for promissory estoppel under New York law requires the plaintiff to prove three elements: (1) a clear and unambiguous promise; (2) reasonable and foreseeable reliance on that promise; and (3) injury to the relying party as a result of the reliance. See Kaye v. Grossman, 202 F.3d 611, 615 (2d Cir. 2000) (citing Readco, Inc. v. Marine Midland Bank, 81 F.3d 295, 301 (2d Cir. 1996)).

---

[3]    Even assuming *arguendo* an oral promise entitling Plaintiff to an LTIP was enforceable, the Company's obligation to make payments under that plan would not begin for three (3) or (five) years. DSOF at ¶¶ 34, 167, 171.

Within the employment context, however, Courts within the Second Circuit, including this Court, routinely hold that a plaintiff may not state a claim for promissory estoppel arising from employment related promises. See, e.g., Deutsch v. Kroll Assocs., 2003 U.S. Dist. LEXIS 16613, at *8; Rojo v. Deutsche Bank, 2010 U.S. Dist. LEXIS 62796, at *23-24 (S.D.N.Y. June 23, 2010); Baguer v. Spanish Broad. Sys., Inc., 2007 U.S. Dist. LEXIS 70793, at *14-15 (S.D.N.Y. Sept. 20, 2007); Dalton v. Union Bank of Switzerland, 134 A.D.2d 174, 176 (1st Dep't 1987). Even if promissory estoppel were available for employment claims, and even if Plaintiff could somehow prove the "promises" he alleges, Plaintiff's promissory estoppel claim would *still fail* as a matter of law because he has not alleged a "clear and unambiguous promise" on which he "reasonably" relied.

### 1.    Plaintiff Cannot Identify a Clear and Unambiguous Promise Entitling Him to an LTIP

There is no evidence that Defendants made a clear and unambiguous promise that Plaintiff would definitively receive an LTIP. Instead, the promise, if any, made to Plaintiff was that the parties would engage in further discussions concerning the creation and adoption of an LTIP for Plaintiff and other senior executives. DSOF at ¶¶ 80-82. Defendants adhered to its end of the purported promise, which is clearly captured within the parties' Employment Agreement. DSOF at ¶¶ 123-199.

Where a written statement conflicts with a prior oral representation, the written statement must control. See Bader v. Wells Fargo Home Mortg., Inc., 773 F. Supp. 2d 397, 415 (S.D.N.Y. 2011) (quoting NCC Sunday Inserts, Inc. v. World Color Press, Inc., 759 F. Supp. 1004, 1011 (S.D.N.Y. 1991) ("When an enforceable contract does exist, the parties cannot assert a claim for promissory estoppel based on alleged promises that contradict the written contract.").   In fact, New York courts routinely find that promissory estoppel claims cannot be pursued where a

memorialization of that purported promise exists. See, e.g., Foxley v. Sotheby's Inc., 893 F. Supp. 1224, 1234 (S.D.N.Y. 1995); Bell v. Leakas, 1993 U.S. Dist. LEXIS 3352, *29 (S.D.N.Y. Mar. 13, 1993) ("Promissory estoppel is a legal fiction designed to substitute for contractual consideration where one party relied on another's promise without having entered into an enforceable contract.") (interal citation omitted); Cyberchron Corp. v. Calldata Systems Development, Inc., 831 F. Supp. 94, 112 (E.D.N.Y. 1993), aff'd in relevant part, 47 F.3d 39, 45 (2d Cir. 1995). Indeed, to allow promissory estoppel to establish contractual obligations in situations "where a comprehensive contract exists would contravene the fundamental rules that extrinsic evidence cannot be used to vary the unambiguous terms of a contract and that obligations inconsistent with the terms of a contract cannot be implied." Hartford Fire Ins. Co. v. Federated Dep't Stores, Inc., 723 F. Supp. 976, 993 (S.D.N.Y. 1989) (internal citation omitted).

Here, Plaintiff argues he relied upon a promise for an LTIP from non-party Michael Degan which allegedly induced him to sign on as CEO of Defendant Stuart Dean. DSOF at ¶ 53. Plaintiff's entire cause of action is for a continued reliance on that same purported promise. DSOF at ¶ 340. However, Plaintiff admits such a promise was made prior to reviewing, considering and signing his Employment Agreement with Defendants. DSOF at ¶¶ 49, 54. The Employment Agreement contained very clear and readily understandable Entire Agreement provision. DSOF at ¶ 90. As a sophisticated career executive, Plaintiff readily admitted he understood those specific terms. DSOF at ¶¶ 91-92. Since the promise Plaintiff contends supports his claim here arose prior to his execution of the Employment Agreement, any such alleged promise was superseded by the terms of Plaintiff's Employment Agreement. Indeed, New York Courts routinely hold that, any purported promises that were made prior to the effectiveness of an employment agreement cannot serve as the clear and unambiguous promise sufficient to support a plaintiff's promissory estoppel

claim. See Integra FX3X Fund, L.P. v. Deutsche Bank, AG, 2016 U.S. Dist. LEXIS 37092, at *16 (S.D.N.Y. Mar. 22, 2016) ("Such a merger clause 'requires dismissal of any claim founded on the earlier alleged oral agreement between the parties.'" (internal citation omitted)).

As this Court correctly decided on Defendants' Motion to Dismiss, "the Employment Agreement indicates on its face that at the time of execution, the parties did not intend to be bound to a specific LTIP." DSOF at ¶ 326. Rather, "at the time [Plaintiff] was hired the parties contemplated that they would subsequently negotiate the terms of the LTIP and then reduce them to writing." DSOF at ¶ 327. The plain language of Plaintiff's Employment Agreement, specifically the phrase ███████████████████████████, makes clear the purported promise between the parties was an agreement to agree to continue discussions to potentially mutually agree upon an LTIP at some point in the future. DSOF at ¶¶ 80-81. This is the only clear and unambiguous promise Defendants made to Plaintiff and the only promise which can serve as the basis of Plaintiff's promissory estoppel claim. DSOF at ¶¶ 80, 90.

There are no, and were no, guarantees contained within that Employment Agreement that mutual agreement will actually be consummated. DSOF at ¶ 80. This is particularly true here where both parties had to contribute to the ████████████ DSOF at ¶¶ 80-84. Based on the express terms of an agreement between sophisticated parties, Defendants acted in good-faith and took steps to effectuate that mutual agreement. DSOF at ¶¶ 123-199. Defendant reached out to a third-party to begin the evaluation, contemplation and ultimate preparation of a complex incentive compensation plan, the LTIP. DSOF at ¶¶ 132-135, 164-172, 179-181. Plaintiff, however, failed to do his part. DSOF at ¶¶ 139-142, 150-155, 167, 171-177, 180-181. Defendants continually requested that Plaintiff provide financial information to enable the formulation and creation of an LTIP. Id. Plaintiff knew this information was necessary to prepare an LTIP and yet

he failed to provide it for nearly two (2) years. DSOF at ¶¶ 153-155. Without Plaintiff's participation, no LTIP could have been effectuated. DSOF at ¶¶ 153, 174-177. In this regard, Plaintiff readily admitted that, consistent with the terms of his Employment Agreement, the Company could not have unilaterally adopted any LTIP without his approval. DSOF at ¶¶ 83-84.

### 2.    Plaintiff's Alleged Reliance Was Not Reasonable or Foreseeable

Plaintiff's claim fails on additional grounds – his inability to establish reasonable and foreseeable reliance. "In assessing the reasonableness of a plaintiff's alleged reliance, [the court] considers the entire context of the transaction, including factors such as its complexity and magnitude, the sophistication of the parties, and the content of any agreements between them." Emergent Capital Investment Mgmt., LLC v. Stonepath Group, Inc., 343 F.3d 189, 195 (2d Cir. 2003).

Where a written statement conflicts with a prior oral representation, reliance on the oral representation is simply unreasonable. As outlined above, Plaintiff claims he relied on a promise from Michael Degan that Plaintiff would be entitled to an LTIP as CEO. DSOF at ¶ 53. However, that promise occurred prior to the signing of the Employment Agreement and was superseded by the integration clauses in that same Employment Agreement. DSOF at ¶¶ 54, 56. Based on the Entire Agreement and Prior Agreement paragraphs, it was thus unreasonable of Plaintiff, and unforeseeable by Defendants, to rely on any promise other than the one memorialized in the agreement, which was to continue discussions regarding an LTIP. See Integra FX3X Fund, 2016 U.S. Dist. LEXIS 37092, at *5 ("Reliance on promises contrary to a written contract with a merger clause is unreasonable as a matter of law"); see also D'Accord Fin. Servs., Inc. v. Metsa-Serla Oy, 1999 U.S. Dist. LEXIS 1202, at *4 (S.D.N.Y. Feb, 8, 1999) (same); NCC Sunday Inserts, 759 F. Supp. at 1012 n.13 (noting the existence of an Entire Agreement provision could make it unreasonable for a party to rely on outside promises, thereby serving as further reason to deny a

17

promissory estoppel claim); see also In re Gulf Oil/Cities Serv. Tender Offer Litig., 725 F. Supp. 712, 735 (S.D.N.Y. 1989) (dismissing promissory estoppel claim and finding plaintiffs unreasonably and unforeseeably relied on external promises where the agreement in question contained an Entire Agreement provision).

Moreover, Plaintiff's conclusory contention that he should have definitively received an LTIP during his employment is wholly unsupported by the facts. The only reasonable assumption was that Defendants would discuss with Plaintiff the potential for adoption of an LTIP, which they plainly did. DSOF at ¶¶ 123-199. Plaintiff's reliance on an entitlement to an LTIP is simply misplaced and without reason. Both the express terms of the contract and Plaintiff's own testimony demonstrate that the purported promise was nothing more than the parties agreeing to have discussions about the terms of an LTIP. DSOF at ¶¶ 80-84, 326-327. They did that here. DSOF at ¶¶ 123-199. Plaintiff, after the fact, simply wishes he would have asked for more. DSOF at ¶ 77. He did not. DSOF at ¶¶ 87-89. "Where, as here, a party has been put on notice of the existence of material facts which have not been documented and he nevertheless proceeds with a transaction without securing the available documentation or inserting appropriate language in the agreement for his protection, he may truly be said to have willingly assumed the business risk that the facts may not be as represented." Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1543 (2d Cir. 1997).

In addition, it is without dispute that an LTIP is a complicated legal document that typically runs multiple years and is subject to complex formulas. DSOF at ¶¶ 9-10, 11, 30-34, 40-41. Plaintiff's reliance on any specific terms and/or amount of payout for a complicated legal document such as an LTIP, absent the actual existence of that document, is simply unreasonable. See R.G. Grp., Inc. v. Horn & Hardart Co., 751 F.2d 69, 71 (2d Cir. 1984) (affirming dismissal of

promissory estoppel claim and noting "when experienced businessmen and lawyers are told explicitly and clearly that a major and complex agreement will be binding only when put in writing, then they should be rather cautious about assuming anything different."); see also Ashland Inc. v. Morgan Stanley & Co., 700 F. Supp. 2d 453, 472 (S.D.N.Y. 2010) (dismissing with prejudice plaintiff's promissory estoppel claim and finding unreasonable plaintiff's reliance on vague and indefinite promises given the complex financial markets in which the parties were operating).

Without reasonable or foreseeable reliance, Plaintiff's promissory estoppel claim must fail as a matter of law.

### 3. Plaintiff Cannot Demonstrate Any Injury Arising From His Unreasonable Reliance

Assuming *arguendo* Plaintiff could establish the first two elements of his promissory estoppel claim, it would nevertheless fail because there is no evidence that Plaintiff suffered, or would have suffered, any injury as a result of his alleged reliance. See Sheahan v. CBS Inc., 1994 U.S. Dist. LEXIS 2623, at *36 (S.D.N.Y. Mar. 3, 1994) (finding promissory estoppel claim is ripe for summary judgment where plaintiff can show no compensable injury in reliance on the alleged promise).

Plaintiff claims Defendants' alleged promises cost him millions of dollars in unpaid incentive compensation. DSOF at ¶ 337. However, Plaintiff readily admits he contemplated and expected to receive Mark Parrish's LTIP, a plan under which Plaintiff would not have been entitled to receive any payout upon termination. DSOF at ¶ 85-86. As an initial matter, Mr. Parrish's LTIP was comprehensive and detailed in nature, covering multi-year periods of time. DSOF at ¶¶ 30-31, 40-41. The LTIP plan contained a very specific and complex formula for earning and vesting any award. DSOF at ¶¶ 32-34, 40-41. Plaintiff, however, did not even intend to stay with the Company long enough for an LTIP to vest. DSOF at ¶¶ 173, 176, 185-187, 190-191. Most

critically, during Plaintiff's tenure, the value of the operating company was not increased by Plaintiff in the three years since Plaintiff's hire and the Company was never sold. DSOF at ¶¶ 198-199. Moreover, any such LTIP award would be forfeited if the CEO resigned or was terminated with or without cause. DSOF at ¶ 37. In fact, Mr. Parrish's LTIP provided for payout of an award only upon death, disability, retirement, sale of the company, or an IPO. DSOF at ¶ 38, 169. Plaintiff cannot dispute these payout scenarios never occurred. DSOF at ¶¶ 198-199.

Based on these undisputed facts, Plaintiff cannot establish an injury resulting from his alleged reliance. Accordingly, Plaintiff's promissory estoppel claim fails as a matter of law and should be dismissed with prejudice.

## B. Breach of the Implied Covenant of Good Faith and Fair Dealing

### 1. Plaintiff's Claim is Duplicative of His Breach of Contract Claims

As an initial matter, Plaintiff's claim fails as a matter of law because it is duplicative of both his failed, and currently alleged, breach of contract claims. "New York law will not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when it arises from the same allegations as a breach of contract claim". Mendez v. Bank of Am. Home Loans Servicing, LP, 840 F. Supp. 2d 639, 652 (E.D.N.Y. 2012). Under New York law, "a claim for breach of the implied covenant of fair dealing cannot substitute for an unsustainable breach of contract claim." Nikitovich v. O'Neal, 40 A.D.3d 300, 301 (1st Dep't 2007); Rather v. CBS, 68 A.D.3d 49, 55, (1st Dep't 2009). "The covenant of good faith cannot be used to impose obligations that were not explicitly part of the agreement." Levion v. Societe Generale, 822 F. Supp. 2d 390, 405 (S.D.N.Y. 2011), aff'd, 503 F. App'x 62 (2d Cir. 2012) (internal citation omitted).

Assuming, *arguendo*, that Plaintiff can maintain a breach of the covenant of good faith and fair dealing, which he cannot, his claim still must be dismissed because it is intrinsically tied to the damages alleged in his breach of contract claim. See Rather, 68 A.D.3d at 55; see also Canstar v. J.A. Jones Constr. Co., 212 A.D.2d 452, 453 (N.Y. App. Div. 1st Dep't 1995). Accordingly, a breach of the implied covenant of good faith and fair dealing claim which is merely duplicative of the plaintiff's breach of contract claim is subject to dismissal. See id.; see also Concesionaria DHM, S.A. v. Int'l Fin. Corp., 307 F. Supp. 2d 553, 564 (S.D.N.Y. 2004) ("courts routinely dismiss a claim for breach of an implied covenant of good faith 'as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach . . . of an express provision of the underlying contract'") (internal citation omitted).

Here, Plaintiff's allegations, and facts, in support of his breach of the implied covenant of good faith and fair dealing claim parrot his contentions supporting his previously dismissed and currently alleged breach of contract claims. DSOF at ¶¶ 338-339, 341. This cause of action is simply an end-around for those failed claims. In each instance, Plaintiff alleges Defendants breached the contract and/or covenant by failing to provide Plaintiff with an LTIP and bonus payment, as well as by terminating Plaintiff's employment based on pretextual misconduct. Id. Accordingly, Plaintiff's breach of good faith and fair dealing claim should be dismissed.

## 2. The Implied Covenant of Good Faith and Fair Dealing Fails As A Matter Of Law

Even if Plaintiff's claim is not duplicative of his breach of contract claims, it nevertheless fails as matter of law. To state a cause of action for breach of the implied covenant of good faith and fair dealing under New York law, "the plaintiff must allege facts which tend to show that the defendant sought to prevent performance of the contract or to withhold its benefits from the plaintiff." Aventine Inv. Mgmt., Inc. v. Canadian Imperial Bank of Commerce, 697

21

N.Y.S.2d 128, 130 (2d Dep't 1999).  "To be successful on such a claim, parties must generally show that they have been deprived of a contract right by an affirmative act, not merely a failure to act." Phx. Racing, Ltd. v. Lebanon Valley Auto Racing Corp., 53 F. Supp. 2d 199, 216 (N.D.N.Y. 1999) ((citing, inter alia, M/A-Com Sec. Corp. v. Galesi, 904 F.2d 134, 136 (2d Cir. 1990) (holding that under the implied covenant of good faith, "neither party to a contract shall *do* anything which has the effect of destroying or injuring the right of the other party to receive the fruits of the contract.") (emphasis added); Leberman v. John-Blair & Co., 880 F.2d 1555, 1560 (2d Cir. 1989) ("The covenant of good faith and fair dealing 'precludes each party from *engaging in conduct* that will deprive the other party of the benefits of their agreement.'") (emphasis added)).

Here, Plaintiff alleges Defendants breached the implied covenant of good faith and fair dealing by promising he was entitled to an LTIP, failing to deliver that LTIP, and prematurely terminating his employment to avoid paying compensation he would otherwise be owed. DSOF at ¶ 341. As mentioned above, Plaintiff had no contractual entitlement to an LTIP or bonus. See Points I and II supra. Moreover, there is simply no evidence that Defendants took some affirmative act to deprive Plaintiff of receiving either a bonus or an LTIP. To the extent Plaintiff's argument is Defendants failed to take action in engaging those negotiations to create and implement an LTIP, or failed to pay him a bonus, such an argument is not only false, but moreover it is simply insufficient to support this claim. Phx. Racing, Ltd., 53 F. Supp. 2d at 216.

Defendants are entitled to summary judgment on this claim and Count Six of Plaintiff's Amended Complaint should be dismissed with prejudice.

### C.     **Fraudulent Inducement**

To prevail on a fraud claim under New York law, a plaintiff must prove: (1) the defendant made a material misrepresentation; (2) the defendant knew of its falsity; (3) the defendant possessed an intent to defraud; (4) the plaintiff reasonably relied on the

misrepresentation; and (5) the plaintiff suffered damage as a result of the misrepresentation. See National Union Fire Ins. Co. of Pittsburgh, Pa. v. Worley, 690 N.Y.S.2d 57, 60 (1999); see also Kaye, 202 F.3d at 614. Each element of the fraud claim must be shown by clear and convincing evidence, at the summary judgment stage as well as at trial. See PPI Enters., Inc. v. Del Monte Foods Co., 2003 U.S. Dist. LEXIS 16006, at *19 (S.D.N.Y. Sept. 11, 2003). "This evidentiary standard demands a high order of proof . . . and forbids the awarding of relief whenever the evidence is loose, equivocal or contradictory." Abrahami v. UPC Constr. Co., 638 N.Y.S.2d 11, 13 (App. Div. 1996) (internal quotations omitted). This means that fraud "'will not be assumed on doubtful evidence or circumstances of mere suspicion.'" Fire & Cas. Ins. Co. of Conn. v. 2207 7th Ave. Rest. Corp., 2004 U.S. Dist. LEXIS 1741, at *3 (S.D.N.Y. Aug. 30, 2004) (quoting Brayer v. John Hancock Mut. Life Ins. Co., 179 F.2d 925, 928 (2d Cir. 1950)).

This cause of action cannot be based exclusively upon a mere failure to perform promises of future acts. Wegman v. Dairylea Cooperative, Inc., 50 A.D.2d 108, 113 (4th Dep't 1975) (citations omitted), appeal dismissed, 38 N.Y.2d 918 (1976). A failure to perform is merely a breach of contract, which must be enforced by an action on that contract. Id. "Simply dressing up a breach of contract claim by further alleging that the promisor had no intention, at the time of the contract's making, to perform its obligations thereunder, is insufficient to state an independent tort claim." Telecom Int'l Am., Ltd. v. AT&T Corp., 280 F.3d 175, 196 (2d Cir. 2001) (citing Best Western Int'l v. CSI Int'l Corp., 1994 U.S. Dist. LEXIS 11815, at *4 (S.D.N.Y. Aug. 23, 1994).

### 1.    Plaintiff Cannot Demonstrate Any Misrepresentation by Defendants

Similar to the promissory estoppel claim, Plaintiff premises his fraudulent inducement claim on alleged promises received prior to entering into the Employment Agreement with Defendant Stuart Dean. DSOF at ¶ 342. Plaintiff's fraudulent inducement claim thus fails for

the same reasons as his promissory estoppel claim; he cannot rely on a pre-contractual promise that was superseded by the language of his Employment Agreement. See Alter v. Bogoricin, 1997 U.S. Dist. LEXIS 17369, at *25 (S.D.N.Y. Nov. 4, 1997) ("[Plaintiff's] claim that he was fraudulently induced by pre-contractual promises is defeated by the stark fact that it was within his power to incorporate those promises -- in enforceable terms -- into the Employment Agreement. His failure to do so reflects either his own inconvenient candor or his lack of foresight, but not fraud."). The only relevant and applicable representation regarding Plaintiff's participation in an LTIP was contained within Plaintiff's Employment Agreement. DSOF at ¶¶ 79-82, 327; see Point III, A, 1 supra.

Even assuming Plaintiff argued Section 7 of the Employment Agreement was the alleged misrepresentation, Plaintiff has not proven the representation was false or that Defendants knew the representation was false. Section 7 of Plaintiff's Employment Agreement provides that the Parties would engage in discussions to mutually agree upon an LTIP for which Plaintiff would be eligible to participate. DSOF at ¶¶ 79-82. The record clearly demonstrates that such discussions occurred. DSOF at ¶¶ 123-199. In fact, Defendants even took affirmative steps to effectuate the plan, going as far as to request a proposal from a third-party vendor. DSOF at ¶¶ 132-135, 164-172, 179-181. By Plaintiff's own admission Defendants made multiple requests for certain financial information which would be used in the creation of the LTIP. DSOF at ¶¶ 142, 153-155, 171. To the extent there was any failure to move the process forward, the failure lies with Plaintiff. DSOF at ¶¶ 139-142, 150-155, 167, 171-177, 180-181.

### 2.    Plaintiff Cannot Demonstrate Clear and Convincing Evidence that Defendants Intended to Defraud Plaintiff

Even if Plaintiff could demonstrate Defendants made a misrepresentation regarding the LTIP discussions, his claim would nevertheless fail because he cannot demonstrate Defendants

had any intent to defraud Plaintiff. "A present expression of the intent to perform a future act is actionable as fraud only if actually made with a preconceived and undisclosed intention of not performing it." Tanzman v. La Pietra, 778 N.Y.S.2d 199, 201 (App. Div. 2004) (internal quotation omitted). In other words, "a claim based upon statements of future intention . . . requires proof of a present intent to deceive." Marcraft Recreation Corp. v. Francis Devlin Co., 506 F. Supp. 1081, 1087 (S.D.N.Y. 1981); see also Cornock v. Murnighan, 727 N.Y.S.2d 803, 804 (App. Div. 2001) (upholding summary judgment for defendant where plaintiff failed to provide any evidence that defendant did not intend to fulfill promise at the time it was made); Non-Linear Trading Co. v. Braddis Assocs., 243 A.D.2d 107, 675 N.Y.S.2d 5, 13 (App. Div. 1998) (noting that a statement of future intention is fraudulent only if the speaker never intended to honor the promise). Intent to deceive must be shown by evidence of "'guilty knowledge or willful ignorance.'" Schwartz v. Newsweek, Inc., 653 F. Supp. 384, 390 (S.D.N.Y. 1986) (quoting Mfrs. & Traders Trust Co. v. Sapowitch, 72 N.E.2d 166, 168 (N.Y. 1947)).

Here, Plaintiff has not and cannot identify a single piece of evidence to demonstrate that Defendants had an intent to defraud Plaintiff when the parties entered into the Employment Agreement. In fact, the record is wholly absent of any evidence suggesting such an intent. As outlined above, at the time the parties entered into the Employment Agreement Defendants intended to engage in future discussions with Plaintiff regarding an LTIP. DSOF at ¶¶ 79-82, 327. The record proves Defendants acted upon those intentions. DSOF at ¶¶ 123-199.

### 3.     Plaintiff Did Not Reasonably Rely On Any Misrepresentation

Again, in direct alignment with the promissory estoppel claim, Plaintiff cannot as a matter of law argue he reasonably relied on the alleged promise received by Michael Degan. See Point III, A, 2 supra. Plaintiff has a long history of serving in Executive roles for which his Employment Agreement specifically detailed his compensation. DSOF at ¶¶ 3-16. As a Board

Member at Stuart Dean, Plaintiff assisted in creating executive employment agreements, bonuses and long-term incentive compensation programs, including for Mr. Parrish. DSOF at ¶¶ 17-24, 35-36. When Plaintiff became CEO of Stuart Dean, he had three (3) months to review his Employment Agreement. DSOF at ¶ 56. Before he signed it, Plaintiff admittedly understood its terms, including the Entire Agreement provision. DSOF at ¶ 58. Plaintiff also understood his Employment Agreement was different than Mr. Parrish's, and that it did not contain the same LTIP language. DSOF at ¶¶ 26-27, 87-89. Most critically, Plaintiff knew that Mr. Parrish had a detailed and specific LTIP annexed to his Employment Agreement, while Plaintiff's Agreement did not. DSOF at ¶¶ 87-89. Nevertheless, Plaintiff signed his Employment Agreement without ever insisting upon language that reflected the alleged promise from Michael Degan. DSOF at ¶¶ 56, 58, 87-89. Considering Plaintiff's extensive knowledge and experience with Executive Agreements and compensation, it was wholly unreasonable for Plaintiff to continue relying on any purported pre-contractual, oral promise that directly conflicted with this Employment Agreement.

### 4.     Plaintiff Did Not Suffer Any Damage

Even assuming *arguendo* Plaintiff was successful in establishing the other elements of his fraudulent inducement claim, Defendants are nevertheless entitled to summary judgment because Plaintiff cannot demonstrate any damages resulting from the alleged misrepresentation. As outlined supra, Plaintiff would not have been entitled to payout of an LTIP under the terms outlined in the Mark Parrish plan. DSOF at ¶¶ 37, 38, 169, 198-199. Without proof of damages, Count Seven of the Amended Complaint fails as a matter of law and should be dismissed with prejudice.

### D.     Negligent Misrepresentation

To prevail on a claim for negligent misrepresentation, Plaintiff must show: (1) Defendants had a duty, as a result of a special relationship, to give correct information to the

plaintiff; (2) Defendants made a false representation that they should have known was incorrect; (3) the information supplied in the representation was known by Defendants to be desired by Plaintiff for a serious purpose; (4) Plaintiff intended to rely and act upon it; and (5) Plaintiff reasonably relied on it to his detriment. See Hydro Investors, Inc. v. Trafalgar Power Inc., 227 F.3d 8, 20 (2d Cir. 2000).

### 1.  Plaintiff Cannot Establish a Special Relationship

In assessing the viability of a negligent misrepresentation claim, the special relationship requirement will be satisfied only where the defendant owes the plaintiff a fiduciary duty. See Stewart v. Jackson & Nash, 976 F.2d 86, 90 (2d Cir. 1992). However, "'[t]he employer-employee relationship is not fiduciary in nature.'" Kwon v. Yun, 606 F. Supp. 2d 344, 369 (S.D.N.Y. 2009) (internal citation omitted); see also Lind v. Vanguard Offset Printers, Inc., 857 F. Supp. 1060, 1067 (S.D.N.Y. 1994). In fact, New York courts routinely find the employer-employee relationship does not constitute a special relationship sufficient to support a claim for negligent misrepresentation and accordingly find such a claim is not viable as a matter of law. See Stewart, 976 F.2d at 90; Cannon v. Douglas Elliman, LLC, 2007 U.S. Dist. LEXIS 91139, at *10-11 (S.D.N.Y. Dec. 10, 2007) (finding that promises regarding wages and other benefits made by an employer to induce plaintiffs to work in its sales office did not give rise to a fiduciary relationship sufficient to sustain a negligent misrepresentation claim); Onanuga v. Pfizer, Inc., 2003 U.S. Dist. LEXIS 20298, at *3 (S.D.N.Y. Nov. 7, 2003) (finding the allegation that plaintiff was a lifelong employee of defendant corporation did not give rise to any special relationship for purposes of stating a negligent misrepresentation claim); Metzler v. Harris Corp., 2001 U.S. Dist. LEXIS 1903, at *2 (S.D.N.Y. Feb. 26, 2001).

Here, Plaintiff's claim is premised on promises Defendants allegedly made to induce him into accepting their proposed terms for his employment as CEO. DSOF at ¶¶ 343-344. "The relationship at issue is therefore the employer-employee relationship." Kwon, 606 F. Supp. 2d at 356 (finding the relationship at issue for plaintiff's negligent misrepresentation claim was the employer-employee relationship where "defendants made various representations to induce [Plaintiff] to accept their offers of employment and, those representations having proven to be false, caused him to suffer certain employment-related harms"). Plaintiff's claim must fail because he cannot, as a matter of law, demonstrate a special relationship existed between him and the Defendants.

### 2.    Plaintiff Cannot Demonstrate Defendants Made a False Representation

Even if Plaintiff could establish a special relationship, his claim would nevertheless fail as a matter of law. "The second element of this claim requires a plaintiff to demonstrate that the defendant made a false representation that defendant should have known was incorrect." Henneberry v. Sumitomo Corp. of Am., 415 F. Supp. 2d 423, 453 (S.D.N.Y. 2006). The representation must also be factual, as opposed to promissory. U S West Fin. Servs. v. Tollman, 786 F. Supp. 333, 344 (S.D.N.Y. 1992) ("No action for negligent misrepresentation lies where the alleged misrepresentation is promissory rather than factual." (citing Murray v. Xerox Corp., 811 F.2d 118, 123 (2d Cir. 1987); Margrove Inc. v. Lincoln First Bank of Rochester, 388 N.Y.S.2d 958, 960 (App. Div. 1976)).

As outlined for Plaintiff's promissory estoppel and fraudulent inducement claims, Plaintiff premises this claim on alleged *promises* received prior to entering into the Employment Agreement with Defendant Stuart Dean. DSOF at ¶¶ 343-344. Plaintiff's negligent misrepresentation claim thus fails as a matter of law because the alleged misrepresentation is

promissory. Even assuming Plaintiff suddenly agreed with Defendants and claimed the misrepresentation was contained in his Employment Agreement, the claim would still fail because Plaintiff cannot demonstrate that representation was false. The undisputed facts clearly demonstrate Defendants upheld their end of that representation. DSOF at ¶¶ 123-199. Again, as discussed above, Defendants took all necessary steps to prepare the LTIP, including contacting a third-party vendor and requesting critical financial information from Plaintiff. DSOF at ¶¶ 132-135, 164-172, 179-181. By Plaintiff's own admission the Company could not have unilaterally adopted an LTIP without his approval. DSOF at ¶ 83. Based on these undisputed facts, Plaintiff simply cannot demonstrate Defendants' representation was false. Accordingly, his negligent misrepresentation claim must fail as a matter of law.

### 3. Plaintiff Did Not Reasonably Rely on the Michael Degan Representation

Finally, even if Plaintiff could successfully establish the other elements of his negligent misrepresentation claim, this cause of action still fails because Plaintiff cannot prove reasonable reliance as fully outlined supra in Point III, A, 2. See, e.g., Integra FX3X Fund, 2016 U.S. Dist. LEXIS 37092, at *5; D'Accord Fin. Servs., Inc., 1999 U.S. Dist. LEXIS 1202, at *4; NCC Sunday Inserts, 759 F. Supp. at 1012 n.13; In re Gulf Oil, 725 F. Supp. at 735.

Accordingly, Count Eight of Plaintiff's Amended Complaint must be dismissed with prejudice.

### E. Quantum Meruit – Unjust Enrichment

To prevail on a claim for quantum meruit/unjust enrichment in New York, a plaintiff must establish: (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that "equity and good conscience" require restitution. See Kaye, 202 F.3d at 616 (citing Dolmetta v. Uintah Nat'l Corp., 712 F.2d 15, 20 (2d Cir. 1983)). Unjust enrichment is not available where it

simply duplicates, or replaces, a conventional contract or tort claim. Eagle v. Emigrant Capital Corp., 2016 N.Y. Misc. LEXIS 335, at *20-21 (N.Y. Sup. Ct. Feb. 3, 2016). Plaintiff's unjust enrichment claim is nothing more than subterfuge in an attempt to collect on his failed breach of contract claim. Plaintiff has no private right of action for unjust enrichment outside the failed breach of contract claim. Plaintiff attempts to utilize yet another baseless claim in an attempt to collect on the unenforceable oral discussion. See Buckman v. Calyon Securities (USA) Inc., 817 F. Supp. 2d 322, 339 (S.D.N.Y. 2011) ("New York courts have refused to permit litigants to use a quasi-contractual theory as a backdoor to enforce an unenforceable oral bonus promise").

In addition, Plaintiff does not and cannot dispute that he was paid his base salary for the period of his employment. Dhir v. Carlyle Grp. Emple. Co., 2017 U.S. Dist. LEXIS 162386, at *24 (S.D.N.Y. Sep. 29, 2017) (dismissing quantum meruit claim where Plaintiff did not dispute he was paid his base salary). Because the "law is clear that a plaintiff may not allege that his former employer was 'unjustly' enriched at his expense when the employer compensated the plaintiff by paying him a salary," Plaintiff's claim fails. Levion, 822 F. Supp. 2d 390 at 405; accord Karmilowicz v. Hartford Fin. Servs. Grp. Inc., 2011 U.S. Dist. LEXIS 77481, at *31 (S.D.N.Y. July 14, 2011) (dismissing quantum meruit claim where employer paid plaintiff salary).

Even setting aside the fact that Plaintiff received his base salary for the entirety of his employment (DSOF at ¶ 60), Plaintiff still cannot establish Defendants benefited from his serving as CEO. Despite Plaintiff's repeated claim that he would be entitled to receive millions of dollars from the sale of the Company, no such sale ever occurred. DSOF at ¶ 199. This is true both before and after Plaintiff's termination. Id. To date, the Company has not been sold and any sale related discussions have ceased. Id. In fact, the value of the operating company did not even

increase during Plaintiff's tenure. DSOF at ¶ 198. Clearly, Defendants did not materially benefit from Plaintiff serving as CEO.

Accordingly, Plaintiff cannot establish any of the elements of a quantum meruit or unjust enrichment claim and as such Defendants are entitled to summary judgment on this cause of action.

## POINT IV

## PLAINTIFF CANNOT ESTABLISH A BREACH OF ANY FIDUCIARY DUTY

To establish breach of fiduciary duty under New York law, Plaintiff must prove: "(1) the existence of fiduciary relationship, (2) misconduct by the defendant, and (3) 'damages directly caused by [the defendant's] misconduct.'" Sea Trade Mar. Corp. v. Coutsodontis, 744 F. App'x 721, 725 (2d Cir. 2018) (citing Pokoik v. Pokoik, 115 A.D.3d 428, 429 (1st Dep't 2014)). Breach of fiduciary duty is a tort-based claim and "[a]s with other torts in which damage is an essential element, the claim is not enforceable until damages are sustained." IDT Corp. v. Morgan Stanley Dean Witter & Co., 12 N.Y.3d 132, 140, (2009) (internal quotation marks omitted).

### A.      Plaintiff Cannot Establish the Existence of a Fiduciary Duty

Plaintiff's breach of fiduciary duty claim fails as a matter law because no fiduciary relationship existed between Plaintiff and any of the individually named defendants who were members of the Board of Directors. See eBusinessware, Inc. v. Tech. Servs. Grp. Wealth Mgmt. Sols., LLC, 2009 U.S. Dist. LEXIS 122193, at *21 (S.D.N.Y. Dec. 29, 2009) (dismissing fiduciary duty claim brought by company executive against member of Board of Directors because no fiduciary duty exists in employer-employee relationship); see also William Kaufman Org., Ltd. v. Graham & James LLP, 269 A.D.2d 171, 173 (1st Dep't 2000) (internal citations omitted). "The law in [the First] Department, and indeed enunciated in every reported appellate-division-level case, is that employment relationships do not create fiduciary relationships. Simply put, '[the

31

employer] did not owe plaintiff, as employee, a fiduciary duty.'" <u>Rather</u>, 68 A.D.3d at 886 (citing <u>Angel v. Bank of Tokyo-Mitsubishi, Ltd.</u>, 39 A.D.3d 368, 370 (1st Dep't 2007) (citing additional cases))).

       Plaintiff's breach of fiduciary duty claim is thus defective because it is undisputed that at all relevant times Plaintiff was an employee of Defendants and therefore, no fiduciary relationship existed and between the parties. <u>See</u> <u>Angel</u>, <u>Rather</u>, and <u>Budet</u>, <u>supra</u>.

**B.**      <u>**Plaintiff's Fiduciary Duty Claim is Duplicative of His Breach of Contract Claims**</u>

       Even assuming Plaintiff could establish the existence of a fiduciary duty, which he cannot, his claim would nevertheless fail because it is duplicative of the breach of contract claim arising from his termination. <u>See</u> <u>William Kaufman Org., Ltd.</u>, 269 A.D.2d at 173 ("A cause of action for breach of fiduciary duty which is merely duplicative of a breach of contract claim cannot stand."); <u>see also</u> <u>Bullmore v. Banc of Am. Secs. LLC</u>, 485 F. Supp. 2d 464, 469 (S.D.N.Y. 2007) ("Under New York law, claims of fraud and breach of fiduciary duty that merely duplicate contract claims must be dismissed."). Here, Plaintiff argues Defendants Shea, Halstead, Bailey, and Degan breached their alleged fiduciary duties by manufacturing pretextual reasons to justify his termination. DSOF at ¶ 345. Plaintiff's first cause of action is premised upon the exact same allegation, that Defendants created pretext to justify Plaintiff's termination. DSOF at ¶ 338. Thus, Plaintiff's breach of fiduciary duty claim is wholly duplicative of his breach of contract claim and must be dismissed.

<u>**POINT V**</u>

<u>**PLAINTIFF'S CLAIM OF DEFAMATION FAILS AS A MATTER OF LAW**</u>

       To make out a claim for defamation under New York law, a defamation plaintiff must show: (1) the defendant made a false and defamatory statement about the plaintiff, (2) the

defendant published the statement to a third party, (3) fault on the part of the defendant in doing so, and (4) injury to the plaintiff or per se actionability (defamation on its face). Deutsche Asset Mgmt. v. Callaghan, 2004 U.S. Dist. LEXIS 5945, at *39 (S.D.N.Y. Apr. 7, 2004) (citing Weldy v. Piedmont Airlines, Inc., 985 F.2d 57, 61 (2d Cir. 1993)). "A statement constitutes [defamation] per se (and therefore requires no proof of special damages) if it: (1) charges the plaintiff with a serious crime; (2) tends to injure the plaintiff in her trade, business, or profession; (3) accuses the plaintiff of having a loathsome disease; or (4) imputes unchastity to a woman." Cain v. Esthetique, 182 F. Supp. 3d 54, 72 (S.D.N.Y. 2016) (internal citation omitted).

In conducting this analysis, a court must determine whether the words in question are susceptible to only one meaning or of several meaning. Davis v. Ross, 754 F.2d 80, 82 (2d Cir. 1985)). Such a determination is to be made by the court as a matter of law. Id. "If the court determines that the words are susceptible of only one meaning, it then must determine, also as a matter of law, whether that one meaning is defamatory." Id. The court must "consider the publication as a whole," and not "pick out and isolate particular phrases." James v. Gannett Co., 40 N.Y.2d 415, 419 (Ct. App. 1976). The court is to "employ an objective standard and consider whether an ordinary person would find the statement 'reasonably susceptible of a defamatory connotation.'" Davis, 754 F.2d at 82 (quoting James, 386 N.Y.S.2d at 874). The court should not "strain to place a particular interpretation on the published words," James, 386 N.Y.S.2d at 874, nor "interpret [them] 'in their mildest and most inoffensive sense to hold them nonlibellous.'" November v. Time Inc., 244 N.Y.S.2d 309, 311 (Ct. App. 1963) (quoting Mencher v. Chesley, 297 N.Y. 94, 99 (1947)). Finally, the statement in question should "be 'read against the background of its issuance' with respect to 'the circumstances of its publication.'" James, 386 N.Y.S.2d at 874 (quoting Mencher, 297 N.Y. at 99).

Here, Plaintiff premises his entire defamation claim on a single email communication which contains innocuous and standard language. DSOF at ¶¶ 319-320, 346. Specifically, Plaintiff's claim is based on a March 9, 2020 email sent to shareholders and Stuart Dean employees stating Plaintiff ███████████████████████████████████ DSOF at ¶¶ 319-320. Plaintiff argues the statement contained in this email constituted defamation per se because it tended to injure Plaintiff's trade, business, or profession. DSOF at ¶ 347. Defendants are entitled to summary judgment because this statement is incapable, as a matter of law, of the defamatory construction Plaintiff gives to it. See Lian v. Sedgwick James, Inc., 992 F. Supp. 644, 649 (S.D.N.Y. 1998).

In Lian, the plaintiff and his supervisor had a telephone call to discuss narrowing the geographical scope of the plaintiff's business activities. Id. at 647. Following the call, plaintiff's supervisor distributed an email to plaintiff's coworkers and the Head of Human Resources claiming the pair had mutually agreed plaintiff would "seek employment and opportunity outside of [the Company] effective immediately". Id. at 647. Plaintiff commenced an action for libel, arguing the statements in his Supervisor's email were false and defamatory because they impugned his professional reputation. Id. In granting Defendants' motion for summary judgment, the Court applied the aforementioned analysis and found the "challenged e-mail communication in this case is reasonably susceptible of only one interpretation, and that such interpretation is not defamatory as a matter of law". Id. at 649. Critical to the Court's decision was the fact the e-mail "merely announced the termination of plaintiff's employment at [the Company] and instructed personnel and security to take the appropriate measures to prepare for plaintiff's departure from the company." Id. The Court concluded that "'[i]t is only when the publication

contains an insinuation that the dismissal was for some misconduct that it becomes defamatory.'" Id. (quoting Nichols, 309 N.Y. at 601).

The same conclusion should be reached here. It is undisputed that the March 9th email merely describes Plaintiff's departure from the Company. DSOF at ¶¶ 319-320. Even if Plaintiff argues the statement is false because he did not step down but rather was terminated, nothing in the email "'reflects in any way on [plaintiff's] personal or professional integrity or ability". Lian, 992 F. Supp. at 649. The email cites no specific reason for Plaintiff's departure, "such as incompetency, misconduct or any other behavior that could be said to disparage him personally or in his profession". Id. Rather the email sheds Plaintiff in a positive light, with the Board thanking Plaintiff for his service and wishing him luck in his future endeavors. DSOF at ¶ 320. "'On the basis of any reasonable reading of the publication before [the court], it is impossible to conclude that it says or implies anything that could subject . . . plaintiff[] to contempt or aversion, induce any unsavory opinion of [him] or reflect adversely upon [his] work.'" Id. (quoting Nichols, 309 N.Y. at 601).

Plaintiff has failed to present any evidence from which a reasonable jury could find that the March 9, 2020 e-mail or the statement contained therein was defamatory per se. Accordingly, Defendants' motion for summary judgment dismissing Plaintiff's defamation claim should be granted.

## POINT VI

## PLAINTIFF'S TERMINATION DID NOT BREACH HIS EMPLOYMENT AGREEMENT

Under New York law, a plaintiff must allege: "(1) the existence of a contract, (2) performance by the party seeking recovery, (3) non-performance by the other party, and (4)

damages attributable to the breach." <u>RCN Telecom Services, Inc.</u>, 156 Fed. Appx. at 349 (citing <u>Marks</u>, 61 F. Supp. 2d at 88)).

   Plaintiff's first breach of contract claim is premised upon the inaccurate assumption that Defendants failed to comply with the terms of his Employment Agreement when they terminated his employment without providing 10-days' written notice as required by Section 10(a)(ii)(A). DSOF at ¶ 348. This assumption is fatal to Plaintiff's claim. In reality, Defendants' terminated Plaintiff under Section 10(a)(ii)(B), "dishonesty in the performance of Executive's duties hereunder". DSOF at ¶¶ 97, 315-318. Critically, this provision does not contain a prior notice requirement. DSOF at ¶ 97. Plaintiff further misconstrues the process by which the Board reached its decision to terminate his employment. Initially, Defendants intended to terminate Plaintiff under Section 10(c)(i) of his Employment Agreement, termination without cause. DSOF at ¶ 308. As mentioned <u>supra</u>, these discussions first began when the Company's Head of Human Resources resigned and shared a number of concerns about Plaintiff during her Exit Interview. DSOF at ¶¶ 289-294. Through interviews with Company employees, the Board corroborated Ms. Israni's allegations. DSOF at ¶¶ 295-296. The Board thus held an Executive Board Meeting on March 5, 2020, at which time they decided to give Plaintiff the option of either resigning or being terminated without cause. DSOF at ¶¶ 297-303.

   On March 7, 2020, Mr. Shea had a telephone call with Plaintiff to convey the Board's offer. DSOF at ¶ 305, 307-308. During the conversation, Plaintiff informed Mr. Shea that he had a ███████ for the Company. DSOF at ¶ 309. Plaintiff indicated this was the same buyer he informed Mr. Shea about in December 2019. <u>Id.</u> Plaintiff admitted that he continued to have discussions with this same suitor *after* the Board instructed Plaintiff to cease any sales related activities, and after February 2020 when Mr. Shea again instructed Plaintiff to stop any such sale

discussions. Id.  During the March 7, 2020 call, when Mr. Shea asked Plaintiff again to identify the buyer, Plaintiff refused to disclose the name. DSOF at ¶ 310. Based on this new information provided by Plaintiff, it was clear Plaintiff had refused to abide by the Board's explicit instruction to ███████████████████████████████████████████████████████████████ ████████████████████████████████████████ DSOF at ¶¶ 240-288, 309. Instead, Plaintiff continued to have sales related discussions and did not disclose the name of the secret buyer. Id. The Board thus reconsidered whether they would move forward with their original plan to terminate Plaintiff without cause, or if they would vote to terminate Plaintiff with cause. DSOF at ¶¶ 313-314. Ultimately, this new information ████████████████████████████████████ ███████████████ DSOF at ¶ 315.

Accordingly, on March 8, 2020, pursuant the express wording of Plaintiff's Employment Agreement, Defendant Stuart Dean chose to terminate Plaintiff for cause due to his dishonesty by failing to inform the Board of his sales related activities and for continuing to engage in such activities notwithstanding the Board's clear prior directives. DSOF at ¶ 318. Plaintiff does not and cannot demonstrate any reason why Defendants violated the Employment Agreement by terminating Plaintiff in this manner. Accordingly, Plaintiff cannot establish non-performance by Defendants under the contract and his claim must fail.

**POINT VII**

**PLAINTIFF WAIVED, BY CONTRACT, ANY ENTITLEMENT TO ANY COMPENSATION OTHER THAN WHAT IS PROVIDED FOR THROUGH THE EXPRESS LANGUAGE OF HIS EMPLOYMENT AGREEMENT**

By the express wording of his Employment Agreement, Plaintiff agreed that he would not be entitled to any additional compensation or benefits, except those expressly defined as "Accrued Rights" in the Employment Agreement. DSOF at ¶¶ 98-99, 101-102. Neither the bonus nor the LTIP was defined as an Accrued Right. DSOF at ¶¶ 98, 101.

As was outlined supra in Point 2.A., a court's general objective in analyzing a contract "should be to give effect to the intentions of the parties in entering into the agreements." Metro. Life Ins. Co., 906 F.2d at 889. Where "'[t]he parties having agreed upon their own terms and conditions, 'the courts cannot change them and must not permit them to be violated or disregarded.'" Id. (quoting Diversified Mortgage Investors v. U.S. Life Title Ins. Co. of New York, 544 F.2d 571, 575 (2d Cir. 1976) (internal citation omitted)).

Here, the express language of Plaintiff's Employment Agreement makes clear that regardless of whether Plaintiff is terminated with or without clause, he is only entitled to receive the benefits articulated in Section 10 of the Agreement. DSOF at ¶¶ 98-99, 101-102. Pursuant to Section 10(a)(iii), upon termination "for Cause", Plaintiff is entitled to payment of his Base Salary, reimbursement of expenses, and Employee Benefits (as defined in Section 8) (the "Accrued Rights"). DSOF at ¶ 98. Nowhere in Section 10(a)(iii) does it state that Plaintiff is entitled to severance pay as alleged in Plaintiff's Amended Complaint. Id. What is does state, however, is that ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████ DSOF at ¶ 99. The same exact waiver language can be found in Section 10(c)(iii) which governs Plaintiff's rights upon termination "Without Cause". DSOF at ¶¶ 101-102. While Section 10(c)(iii) provides Plaintiff with the additional benefits of six (6) months of salary continuation and 12 months of COBRA continuation, noticeably absent from that provision is any right to payment of a bonus or LTIP. DSOF at ¶ 101. Clearly the parties intended Section 10 to contain all of the material terms regarding any compensation due and owing to Plaintiff upon termination. Plaintiff cannot now

argue that he is entitled to additional compensation and benefits simply because he is unsatisfied with what he originally agreed to receive. See Metro. Life Ins. Co., 906 F.2d at 889 ("The parties' rights under an unambiguous contract should be fathomed from the terms expressed in the instrument itself rather than from extrinsic evidence as to terms that were not expressed or judicial views as to what terms might be preferable.")

Defendants are thus entitled to summary judgment and Counts One, Two, Three, Four, Five, Six, Seven, Eight, Nine, and Eleven of Plaintiff's Amended Complaint should be dismissed with prejudice.

**POINT VIII**

**THE INDIVIDUALLY NAMED DEFENDANTS SHOULD BE DISMISSED**

Finally, Plaintiff's Amended Complaint should be dismissed with prejudice in its entirety as to the individually named Defendants because none of Plaintiff's allegations against these individuals support his claims. Under New York law "a corporate officer cannot be held liable for a corporation's breach of contract claims." Komatsu Invs., Ltd. v. Greater China Corp., 1997 U.S. Dist. LEXIS 310, at *2 (S.D.N.Y. Jan. 17, 1997); accord Hudson Venture Partners, L.P. v. Patriot Aviation Group, Inc., 1999 U.S. Dist. LEXIS 1518, at *6 (S.D.N.Y. Feb. 17, 1999); Cruz v. NYNEX Info. Resources, 263 A.D.2d 285 (N.Y. App. Div. 1st Dep't 2000). Even if a corporate individual's actions caused a breach of a corporation's contractual obligations, such conduct does not render the individual personally liable. See Cruz, 263 A.D.2d at 288. Moreover, Plaintiff cannot point to any facts that show these individuals did more than vote on his departure. DSOF at ¶ 318. He wholly fails to allege any specific promises, defamatory statements, or representations these named Defendants made in their individual capacities to support his claims.

## CONCLUSION

For all the foregoing reasons, Plaintiff's Complaint must be dismissed with prejudice with regard to Defendants.

Dated: New York, New York
      December 2, 2020

                         Respectfully submitted,

                         JACKSON LEWIS P.C.
                         666 Third Avenue
                         New York, New York 10017
                         (212) 545-4000

                         By: */s/ Michael A. Jakowsky*
                             Michael A. Jakowsky
                             Lauren A. Parra

4823-9617-7619, v. 2